99 P.3d 125

In the Matter of Suspension of the
Driver's License of Randy K.
MAHURIN.

Randy K. Mahurin, Petitioner–Appellant,

v.

State of Idaho, Department
of Transportation,
Respondent.

No. 29533.

Court of Appeals of Idaho.

June 18, 2004.

Review Denied Oct. 1, 2004.

Clark Feeney, Lewiston, for appellant. Charles M. Stroschein argued.

Hon. Lawrence G. Wasden, Attorney General; Edwin Lee Litteneker, Special Deputy Attorney General, Boise, for respondent. Edwin Lee Litteneker argued.

LANSING, Chief Judge.

Randy K. Mahurin appeals the district court's affirmance of a hearing officer's decision to uphold the administrative suspension of Mahurin's driver's license after Mahurin failed a breath test. We affirm.

## I.

## BACKGROUND

On June 30, 2002, Officer Campbell of the Lewiston Police Department was dispatched to investigate a motorcycle accident. At the scene, he observed a motorcycle that was significantly damaged and laying in front of an apartment complex. The officer determined that the motorcycle was registered to Mahurin. While still collecting information at the scene, Officer Campbell observed Mahurin and another male standing nearby, discussing whether Mahurin should be taken to the hospital. Upon the officer's inquiry, Mahurin acknowledged that he owned the motorcycle and had been operating it when the accident occurred. Officer Campbell noticed a moderate odor of alcohol coming from Mahurin's breath and asked him to submit to field sobriety tests. The results of the initial tests were indicative of intoxication. Mahurin then told Officer Campbell, "I've been drinking," and he declined to perform any further tests.

Officer Campbell arrested Mahurin for driving under the influence of alcohol and transported him in the backseat of the patrol car to the Nez Perce County Sherriff's Annex. At that location, Mahurin agreed to submit to a breath test, which indicated a blood alcohol content of 0.23, a level that is nearly three times the legal limit under Idaho law. *See* Idaho Code § 18–8004. The officer then notified Mahurin that his driver's license would be suspended for failure of the breath test, and the license was seized.

Mahurin timely requested a hearing to contest the administrative license suspension. Prior to the hearing, he requested that the hearing officer issue a subpoena for records dating back to April 1, 2002 pertaining to the maintenance of the Intoxilyzer 5000 breath testing equipment used in his case. The hearing officer, however, reduced the scope of the subpoena, and Mahurin ultimately received only maintenance records dating back to May 30, 2002.

At the administrative hearing, Mahurin raised three challenges to the breathalyzer test. He contended: (1) that a solution used in the Intoxilyzer 5000 had not been changed in compliance with the timetable for solution changes set out in the operating manual for the machine; (2) that a required fifteen-minute period of observing the subject being tested before administration of the breath test was not conducted properly in his case; and (3) that the breath test did not measure his blood alcohol content at the time he was driving because he had continued to consume alcohol after the accident and before administration of the breath test. The hearing officer rejected each of these contentions and affirmed the one-year suspension of Mahurin's license.

Mahurin petitioned for judicial review by the district court, which affirmed the hearing officer's decision. Mahurin now further appeals, and contends that: 1) he was denied due process when the hearing officer refused to order the production of maintenance records for the Intoxilyzer 5000 for the full period requested by Mahurin; 2) the breath test was invalid because it was not administered in compliance with applicable standards and because Mahurin consumed alcohol after the accident; and 3) the record before the hearing officer was insufficient to allow for an enhanced suspension period of one year.

## II.

## ANALYSIS

Idaho Code § 18–8002A requires that the Idaho Transportation Department (ITD)

suspend the driver's license of a driver who has failed an alcohol concentration test administered by a law enforcement officer. The period of suspension is ninety days for a driver's first failure of an evidentiary test and one year for any subsequent test failure within five years. I.C. § 18–8002A(4)(a). A person who has been notified of such an administrative license suspension may request a hearing before a hearing officer designated by the ITD to contest the suspension. I.C. § 18–8002A(7). In the administrative hearing, the burden of proof rests upon the driver to prove any of the grounds to vacate the suspension. I.C. § 18–8002A(7); *Kane v. State, Dep't of Transp.*, 139 Idaho 586, 590, 83 P.3d 130, 134 (Ct.App.2003). The hearing officer must uphold the suspension unless he or she finds, by a preponderance of the evidence, that the driver has shown one of several grounds enumerated in § 18–8002A(7) for vacating the suspension. Those grounds include:

> (c) The test results did not show an alcohol concentration or the presence of drugs or other intoxicating substances in violation of section 18–8004, 18–8004C or 18–8006, Idaho Code; or

> (d) The tests for alcohol concentration, drugs or other intoxicating substances administered at the direction of the peace officer were not conducted in accordance with the requirements of section 18–8004(4), Idaho Code, or the testing equipment was not functioning properly when the test was administered. . . .

I.C. § 18–8002A(7)(c) and (d). The hearing officer's decision is subject to challenge through a petition for judicial review. I.C. § 18–8002A(8). *Kane*, 139 Idaho at 589, 83 P.3d at 133.

■ When reviewing a decision of a district court that was rendered upon judicial review of a decision of an administrative hearing officer, this Court examines the hearing officer's decision with due regard for, but independently of, the district court's decision.[1] *Id.; Knight v. Dep't of Ins.*, 124 Idaho 645, 648, 862 P.2d 337, 340 (Ct.App.1993).

Upon judicial review, a hearing officer's decision must be affirmed unless the court determines that the hearing officer's findings, inferences, conclusions or decisions are:

> (a) in violation of constitutional or statutory provisions;

> (b) in excess of statutory authority of the agency;

> (c) made upon unlawful procedure;     .

> (d) not supported by substantial evidence on the record as a whole; or

> (e) arbitrary, capricious, or an abuse of discretion.

I.C. § 67–5279(3). The court may not substitute its judgment for that of the hearing officer as to the weight of the evidence on questions of fact. I.C. § 67–5279(1).

## A. Compliance with Standards for Operation of Intoxilyzer 5000

### 1. Maintenance of Intoxilyzer 5000

Two of Mahurin's issues on appeal concern whether the Intoxilyzer 5000 used for his test was maintained and calibrated in compliance with applicable standards for operation of the equipment. Mahurin contends, first, that he was denied due process when the hearing officer refused to issue a subpoena for all of the Intoxilyzer 5000 maintenance records that Mahurin sought and, second, that even the limited records produced were sufficient to show that the machine had not been properly maintained and calibrated.

Idaho Code § 18–8004(4) provides that tests to determine alcohol concentration of blood, urine or breath must be performed in facilities or by methods approved by the Idaho State Police and in compliance with standards set by the State Police. To carry out the authority conferred by that statute, the State Police issued operating manuals establishing procedures for the maintenance and operation of breath test equipment, including the Intoxilyzer 5000. *See* Idaho Administrative Code (IDAPA) 11.03.01.013.03. Noncompliance with these procedures is one of the grounds for vacating an administrative license suspension under I.C. § 18–

---

1. We therefore do not address certain of Mahurin's claims of alleged errors by the district court, and we instead review the decision of the hearing officer.

8002A(7)(d). The manual for the Intoxilyzer 5000 states the following concerning solutions to be used for calibration checks of the equipment:

B. Intoxilyzer 5000 Calibration Checks.

1. An Intoxilyzer 5000 calibration check consists of using a wet-bath simulator to analyze solutions supplied by the Idaho State Police Forensic Services or an approved vendor.

. . . .

b. Calibration check solutions should only be used prior to the expiration date as marked on the label.

(1) Solutions should only be used as long as values produced are within the designated acceptable range.

(I) *Solutions should be changed approximately every 100 calibration checks or every month whichever comes first.*

Standard Operating Procedure, Breath Alcohol Testing, Pg. II–2 (emphasis added).

Mahurin attempted to subpoena log sheets that recorded maintenance actions for the Intoxilyzer 5000 dating back to April 1, 2002 in the hope that the records would show that the machine was not operated or maintained in compliance with the manual.[2] The records that he received went back only to May 30, 2002, a period of thirty-one days prior to Mahurin's test. In issuing the subpoena the hearing officer indicated that he did not believe the older records would be relevant.

The maintenance logs that were produced included no entry expressly referring to a solution change between the earliest entry, May 30, 2002, and June 30, 2002, when Mahurin was tested. The log is ambiguous, however, in that it states that on May 30, 2002, the Intoxilyzer 5000 was "placed in service." Whether the placement in service procedures included a solution change is not disclosed. The hearing officer, in his findings, recognized that the maintenance logs did not expressly record a solution change, but inferred that the solution was changed on May 30 when the equipment was placed in service.

■ Mahurin contends that the hearing officer's refusal to order production of all the maintenance logs requested by Mahurin deprived him of due process by preventing him from accessing evidence that could show maintenance and performance failures. We conclude that no due process violation has been shown. Mahurin's request for a subpoena gave the hearing officer no explanation as to why records for such an extended period were thought to be relevant. Although it can be inferred that Mahurin hoped to show some deficiency in the performance or maintenance of the equipment, it is reasonable to conclude that the records he received, covering a one-month period, would be sufficient for that purpose absent any explanation of a need for records covering a more extended period. Here, it was only after examination of the produced records, which presented an ambiguity as to whether a solution change was performed on May 30, that any potential relevance of earlier records became apparent. But upon receiving the produced records, Mahurin made no attempt to demonstrate to the hearing officer the relevance of documents for the additional period. He did not move for reconsideration of the subpoena, seek a second subpoena, or otherwise attempt additional discovery. At his hearing, Mahurin did not renew his request for a broader subpoena, and he made no due process argument to the hearing officer that appears in the record.

Nothing in the record before us suggests that the hearing officer would have refused to subpoena additional records if justification for the request had been presented to the hearing officer by Mahurin. We note also that the ambiguity in the produced records as to whether a solution change occurred on May 30 could have been resolved by Mahurin presenting the testimony of the officer who placed the Intoxilyzer 5000 in service on May 30. Mahurin did not attempt to do this. In these circumstances, Mahurin has not dem-

---

**2.** Mahurin's request for a subpoena was made pursuant to an ITD rule, IDAPA 39.02.72.300.01, which authorizes hearing officers to issue subpoenas upon request of a party. In proceedings before an ITD hearing officer, documents may also be sought through a request or motion for production of documents pursuant to IDAPA 39.02.72.400.

onstrated that he was deprived of due process when the hearing officer declined to issue a subpoena for all of the requested maintenance records.

■ Next, we address Mahurin's contention that the maintenance logs that were produced and placed in evidence showed that the calibration check solution for the Intoxilyzer 5000 had not been changed within the preceding month as prescribed in the manual. According to Mahurin, the directive in the Intoxilyzer 5000 manual that "solutions should be changed approximately every 100 calibration checks or every month whichever comes first," creates a strict requirement that solutions be changed no less than every thirty days. The hearing officer concluded that the language relied upon by Mahurin was recommendatory, not mandatory, and inferred that a solution change occurred on May 30 when the equipment was placed in service. On appeal, Mahurin contends that the hearing officer's interpretation of the manual was incorrect and that the inference drawn by the hearing officer is unsupported by the evidence.

We need not decide the merit of either of Mahurin's contentions because on the record presented, Mahurin failed to meet his burden to prove that the calibration check solution was *not* changed when the equipment was placed back in service on May 30. Mahurin's argument is predicated on a misperception that the ITD bore the burden of proof at the hearing to show that the equipment was properly calibrated and maintained. To the contrary, as noted above, the person requesting a hearing on a license suspension bears the burden under I.C. § 18–8002A(7)(b) to prove one of the enumerated grounds to vacate the suspension. Hence, if the evidentiary record is insufficient to establish whether the solution was changed on May 30, it is Mahurin, not the ITD, who failed in the burden of proof. Here, the machine was placed in service thirty-one days prior to

Mahurin's test, and there is ambiguity as to whether the solution was changed on that date.[3] As previously noted, Mahurin did not subpoena a witness to testify about the procedures conducted on May 30. Because Mahurin presented no affirmative evidence showing that the calibration check solution had not been changed within one month before his June 30 test, any error in the hearing officer's finding or in his interpretation of the manual was harmless.

### 2. Fifteen-minute observation requirement

■ Mahurin next contends that the hearing officer erred in finding that Officer Campbell properly observed Mahurin for fifteen minutes before administering the breath test, as required by the manual for the Intoxilyzer 5000. The manual requires that the breath test subject be monitored for a period of fifteen minutes immediately prior to administration of the breath test to assure that the subject did not smoke, ingest any substance, vomit or belch, which actions could render the breath test inaccurate. Mahurin contends that the observation period conducted by Officer Campbell must have included time while Mahurin was being transported to the sheriff's annex in a patrol car. He points out that in *State v. Carson*, 133 Idaho 451, 453, 988 P.2d 225, 227 (Ct.App. 1999), we held that an observation period conducted during transport of the defendant was inadequate under the circumstances there presented.

The hearing officer's finding that an adequate observation period was conducted is supported by Officer Campbell's police report, which was placed in evidence. It indicates that a sixteen-minute observation period was conducted and began after the arrival of Campbell and Mahurin at the sheriff's annex. Mahurin contends that a police department radio log that was also placed in evidence supports his contention that part of

---

**3.** Although the maintenance log may suffice to show that there was no solution change within *thirty* days prior to Mahurin's test, i.e., between May 31 and June 30, in our view that does not demonstrate a violation of the standard set forth in the manual, for we disagree with Mahurin's assumption that the manual's prescription of a solution change "every month" equates to every thirty days. Most months of the calendar have thirty-one days, and we have been shown no reason to suppose that in this portion of the manual the Idaho State Police intended one month to mean less than thirty-one days.

the observation period must have occurred in the patrol car. We disagree. Although the radio log was admitted into evidence, no testimony explaining entries on the log was offered, and the document is far from self-explanatory. We surmise that the log is created in the police dispatch office, and it appears to record Officer Campbell's activities as they were *reported* by radio, rather than as they *occurred.* The radio log, standing alone, is insufficient to meet Mahurin's burden to prove that the fifteen-minute observation period was not correctly conducted.

**B. Evidence of Post–Accident Alcohol Consumption**

Mahurin contends that he showed, through his own testimony and corroborating unsworn written statements from other witnesses, that he ingested alcohol after the motorcycle accident, and therefore the breath test did not show that he was intoxicated while operating the motorcycle. This evidence, Mahurin asserts, required the hearing officer to vacate the license suspension pursuant to I.C. § 18–8002A(7)(c) on the ground that "[t]he test results did not show an alcohol concentration or the presence of drugs or other intoxicating substances in violation of section 18–8004, 18–8004C or 18–8006, Idaho Code." Mahurin argues that the hearing officer unjustifiably disregarded Mahurin's evidence on this point.

The evidence before the hearing officer included a notation in Officer Campbell's police report describing his conversation with Mahurin after the breath test was administered. According to the police report, Mahurin at that time told the officer that he had been at a bar prior to the accident. Mahurin was asked when he took his last drink, and he responded that it was around the time that the bar closed. According to the police report, the officer further asked Mahurin if he drank anything after he wrecked the motorcycle, and Mahurin replied that he had not drunk anything after leaving the bar. This evidence was in direct conflict with Mahurin's testimony and his witnesses' statements, thus presenting a credibility issue for resolution by the hearing officer. The hearing officer found the information in the police report to

be more credible, stating that Mahurin's testimony and witnesses' statements "do not outweigh Mahurin's voluntary statement that he made to Officer Campbell on the night of his arrest."

Upon judicial review of an administrative hearing officer's order, a court may not set aside findings unless those findings are "not supported by substantial evidence on the record as a whole." I.C. § 67–5279(3)(d). The court may not substitute its judgment for that of the hearing officer as to the weight of evidence or credibility determinations. I.C. § 67–5279(1); *Suits v. Idaho Bd. of Prof. Discipline,* 138 Idaho 397, 399, 64 P.3d 323, 325 (2003); *Morgan v. Idaho Dep't of Health & Welfare,* 120 Idaho 6, 8, 813 P.2d 345, 347 (1991). Mahurin's evidence of post-accident drinking was specifically considered by the hearing officer but was rejected as lacking credibility. This credibility determination is supported by substantial evidence in the record and will not be disturbed by this Court.

**C. Sufficiency of Record to Support Enhancement of Suspension to One Year**

■ Lastly, Mahurin contends that the period of his license suspension should have been reduced by the hearing officer from one year to ninety days. The suspension is based upon I.C. § 18–8002A(4)(a), which provides that an administrative license suspension for failure of an alcohol concentration test shall be for a period of ninety days for the first such test failure and for a period of one year for any subsequent failure of evidentiary testing within a five-year period. Mahurin contends that the State bore the burden to make a prima facie showing of a prior BAC test failure. In this assertion, Mahurin once again misperceives the burden of proof in a hearing to challenge the license suspension. As noted above, if Mahurin contends that he had not previously failed a test within a five-year period, the burden was upon him to produce such evidence. *See* I.C. § 18–8002A(7); *Kane,* 139 Idaho at 590, 83 P.3d at 134.

Mahurin also contends that he was denied due process by the hearing officer's post-hearing determination that the propriety of the enhancement of a license suspension is

not an issue that may be addressed by a hearing officer in proceedings under I.C. § 18–8002A(7). This Court addressed an identical argument in *Kane,* and refused to consider the merits of Kane's argument be-cause Kane had offered no evidence to show that the enhancement was in error. *Kane,* 139 Idaho at 591, 83 P.3d at 135. We stated, "[E]ven if the hearing officer's jurisdiction encompassed authority to reduce the suspension period (a matter that we do not decide), the hearing officer's contrary conclusion did not prejudice Kane because Kane's challenge to the suspension enhancement failed for lack of evidence." *Id.* Similarly, Mahurin presented no evidence to show that he had not, in fact, previously failed a BAC test within the preceding five years. The hearing officer's ruling that the issue would not be considered was not rendered until after the hearing, so it could not have dissuaded Mahurin from offering evidence. Therefore,

any error in the hearing officer's conclusion regarding the scope of his jurisdiction has not prejudiced Mahurin.

### III.

### CONCLUSION

Mahurin has not shown that the hearing officer committed reversible error. Therefore, the order of the district court upholding the decision of the hearing officer is affirmed.

Judge GUTIERREZ and Judge Pro Tem WOOD concur.