**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 35496**

| | |
|---|---|
| IN THE MATTER OF THE DRIVING PRIVILEGES OF:  GORDON C. SCHROEDER ) ) ) | |
| GORDON C. SCHROEDER, ) | **2009 Opinion No. 34** |
| Petitioner, ) | |
| ) | **Filed: April 30, 2009** |
| v. ) | |
| ) | **Stephen W. Kenyon, Clerk** |
| STATE OF IDAHO, DEPARTMENT OF TRANSPORTATION, ) ) | |
| ) | |
| Respondent. ) | |
| ) | |

Appeal from the District Court of the Third Judicial District, State of Idaho, Canyon County.  Hon. Stephen W. Drescher, District Judge.

District court's decision affirming driver's license suspension order of Idaho Transportation Department hearing officer, reversed.

Matthew J. Roker of Lovan Roker, P.A., Caldwell, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Michael J. Kane, Special Deputy Attorney General, Boise, for respondent.

_____

LANSING, Chief Judge

Gordon C. Schroeder appeals from the district court's appellate order affirming the administrative suspension of his driver's license.  We reverse the district court and remand.

**I.**

**BACKGROUND**

Schroeder was stopped for speeding on October 24, 2007 and was subsequently arrested for driving under the influence of alcohol, Idaho Code § 18-8004.  He was taken to the Canyon County Sheriff's Office and consented to a breath test, taken on the Intoxilyzer 5000.  The test showed breath alcohol concentrations of .149 and .139, and Schroeder's driver's license was suspended.  He appealed this suspension to the Idaho Transportation Department (ITD), claiming

that the test was invalid because he had belched during the 15-minute pre-test monitoring period and the breath test operator did not thereupon recommence the monitoring period as required by the test administration instructions for the Intoxilyzer 5000. An ITD hearing officer sustained the license suspension on the ground that belching alone does not necessitate restarting the monitoring period. Schroeder filed a petition for review of the hearing officer's decision by the district court. The district court affirmed the suspension order, and Schroeder now appeals. He asserts that the proper procedures for administering a breath test on the Intoxilyzer 5000 were not followed and that his license suspension consequently should be set aside.

## II.

## ANALYSIS

### A.  Requirements for Administration of Intoxilyzer 5000 Tests

Idaho Code § 18-8002A(4) directs the ITD to suspend the driver's license of any driver who fails an alcohol concentration test. A driver whose license has been suspended may request a hearing to contest the suspension before a hearing officer designated by the ITD. I.C. § 18-8002A(7). In the administrative hearing, the burden of proof rests upon the driver to prove grounds sufficient to vacate the suspension. I.C. § 18-8002A(7); *In re Suspension of Driver's License of Gibbar*, 143 Idaho 937, 942, 155 P.3d 1176, 1181 (Ct. App. 2006); *In re Mahurin*, 140 Idaho 656, 658, 99 P.3d 125, 127 (Ct. App. 2004); *Kane v. State, Dep't of Transp.*, 139 Idaho 586, 590, 83 P.3d 130, 134 (Ct. App. 2003). The hearing officer must uphold the suspension unless the officer finds, by a preponderance of the evidence, that the driver has shown one of several grounds enumerated in § 18-8002A(7) for vacating the suspension. These grounds include a finding that the alcohol concentration test was not conducted by a method that has been approved by the Idaho State Police (ISP) pursuant to I.C. § 18-8004(4). *See* I.C. § 18-8002A(7)(d).

The hearing officer's decision is subject to challenge through a petition for judicial review. I.C. § 18-8002A(8); *Gibbar*, 143 Idaho at 942, 155 P.3d at 1181; *Mahurin*, 140 Idaho at 658, 99 P.3d at 127; *Kane*, 139 Idaho at 589, 83 P.3d at 133. Upon judicial review, a hearing officer's decision must be affirmed unless the court determines that the hearing officer's findings, inferences, conclusions or decisions are: (a) in violation of constitutional or statutory provisions; (b) in excess of statutory authority of the agency; (c) made upon unlawful procedure; (d) not supported by substantial evidence on the record as a whole; or (e) arbitrary, capricious, or

an abuse of discretion. I.C. § 67-5279(3).  The reviewing court may not substitute its judgment for that of the hearing officer as to the weight of the evidence on questions of fact. I.C. § 67-5279(1).  In an appeal from a district court's decision where the district court was acting in its appellate capacity over an agency, this Court will review the agency record independently of the district court's decision.  *Castaneda v. Brighton Corp.*, 130 Idaho 923, 926, 950 P.2d 1262, 1265 (1998).

The ISP has been given the responsibility to promulgate regulations for administration of breath alcohol tests, I.C. §§ 18-8002A(3), 18-8004(4); IDAHO ADMIN. CODE (IDAPA) 11.03.01.013.03, and has done so through creation of standard operating procedures and training manuals for the use of breath test instruments, including the Intoxilyzer 5000.  *See* IDAHO STATE POLICE, STANDARD OPERATING PROCEDURE: BREATH ALCOHOL TESTING (Rev. November 2006) (SOP)[1]; IDAHO STATE POLICE, INTOXILYZER 5000: OPERATOR'S TRAINING MANUAL (INTOXILYZER 5000 MANUAL) (March 2007). Failure to abide by the regulations set forth in the standard operating procedures and training manuals renders the test inadmissible as evidence absent expert testimony that the improperly administered test nevertheless produced reliable results.  *State v. Charan*, 132 Idaho 341, 343, 971 P.2d 1165, 1167 (Ct. App. 1998); *State v. Phillips*, 117 Idaho 609, 613, 790 P.2d 390, 394 (Ct. App. 1990); *State v. Bell*, 115 Idaho 36, 39-40, 764 P.2d 113, 116-17 (Ct. App. 1988).  The standards for administration of breath tests on the Intoxilyzer 5000, set out in both the SOP and in the Intoxilyzer 5000 Manual, require that the test subject be monitored for fifteen minutes immediately before the breath test and that the monitoring period be restarted if certain specified occurrences take place during the monitoring period.  SOP 3.1.4; INTOXILYZER 5000 MANUAL, p. 8.

Schroeder asserts that because the breath test operator did not restart the monitoring period after Schroeder belched, his breath test was invalid and his license suspension should have been vacated by the hearing officer.  His assertion necessitates that we determine whether the breath test regulations mandate that the monitoring period recommence if the subject belches. This is a matter of dispute between the parties because the SOP and the Intoxilyzer 5000 Manual

---

[1]     The SOP has been revised and reissued at least once since Schroeder's test and is currently different in some respects than the version that the parties relied upon in arguing this case.  It is not entirely clear when some changes took place, but we base our analysis on the SOP that both parties appear to have been using throughout their litigation.

are not entirely consistent with respect to what events necessitate restarting the monitoring period. The SOP, which apparently applies to all breath test devices that ISP Forensic Services has approved and certified for use, sets out requirements for administering breath tests. The SOP version at issue here stated in section 3.1:

> **Prior to evidential breath alcohol testing,** the subject must be **monitored for fifteen (15) minutes.** During this time the subject may not smoke, drink, or chew gum, candy, food, or any tobacco product. . . .
>
> . . . .
>
> 3.1.4    During the waiting period, the monitor must be alert for any event that might influence the accuracy of the breath test.
>
> 3.1.4.1 If, during the 15-minute waiting period, the subject vomits or is otherwise suspected of regurgitating material from the stomach, the 15-minute waiting period must begin again.
>
> 3.1.4.2 The operator must be aware of the possible presence of mouth alcohol as indicated by the testing instrument.
>
> 3.1.4.3 If mouth alcohol is suspected or indicated, the operator must begin another 15-minute waiting period before repeating the testing sequence.

The SOP thus made no reference to belching as a circumstance that would affect administration of the test.[2]

The Intoxilyzer 5000 Manual, however, specifies that belching is a factor. It states: "During [the 15-minute monitoring period], the subject may not smoke, consume alcohol, eat, *belch*, vomit, use chewing tobacco, or have gum or candy in the mouth. If *belching* or vomiting does occur or something is found in the mouth, have it removed and wait an additional 15 minutes." (Emphasis added.) Schroeder, relying on these instructions in the Intoxilyzer 5000 Manual, contends that the monitoring period must recommence if the subject belches, while the ITD argues that, per the SOP, only regurgitation of stomach material requires that the monitoring period be restarted. The ITD contends that the SOP and the Intoxilyzer 5000 Manual should be harmonized by interpreting the belching referenced in the Intoxilyzer 5000 Manual to include only belching that results in the regurgitation of stomach material as specified in the SOP.

---

[2]     It should be noted that in contrast to the older SOP cited here, the current SOP specifically lists belching and burping among the things that "should not be allowed" during the monitoring period. SOP 3.1 (2009).

The interpretation and application of statutory law and administrative rules or regulations[3] presents purely legal issues over which we exercise free review. *See State v. Perkins*, 135 Idaho 17, 20, 13 P.3d 344, 347 (Ct. App. 2000). Interpretation begins with an examination of the statute's or rule's literal words. *State v. Parkinson*, 144 Idaho 825, 827, 172 P.3d 1100, 1102 (2007); *State v. Burnight*, 132 Idaho 654, 659, 978 P.2d 214, 219 (1999). Where the language of a rule is plain and unambiguous, courts give effect to the rule as written, without engaging in construction. *State v. Rhode*, 133 Idaho 459, 462, 988 P.2d 685, 688 (1999); *State v. Escobar*, 134 Idaho 387, 389, 3 P.3d 65, 67 (Ct. App. 2000). If a court must engage in construction, then its duty is to ascertain and give effect to the intent of the promulgating entity. *Volk v. Baldazo*, 103 Idaho 570, 573, 651 P.2d 11, 14 (1982); *State v. Beard*, 135 Idaho 641, 646, 22 P.3d 116, 121 (Ct. App. 2001). In so doing, we look to the context of the regulatory language in question and to the public policy behind it. *State v. Shanks*, 139 Idaho 152, 154, 75 P.3d 206, 208 (Ct. App. 2003); *State v. Cudd*, 137 Idaho 625, 627, 51 P.3d 439, 441 (Ct. App. 2002). When an ambiguous rule is part of a larger scheme, we focus not only upon the language of the ambiguous rule, but also look at other rules relating to the same subject matter and consider them together to discern the promulgator's intent. *State v. McNair*, 141 Idaho 263, 265-66, 108 P.3d 410, 412-13 (Ct. App. 2005); *State v. Paciorek*, 137 Idaho 629, 632, 51 P.3d 443, 446 (Ct. App. 2002).

The SOP and the Intoxilyzer 5000 Manual conflict with respect to the circumstances in which the monitoring period must be restarted--the Intoxilyzer 5000 Manual plainly directs that the monitoring period must be started anew if any belching occurs, not just belching accompanied by regurgitation. We conclude that for matters on which they conflict, the

---

[3] We recognize that ISP's standards for breath tests are not presented in rules formally promulgated pursuant to the Idaho Administrative Procedure Act, I.C. § 67-5201, *et seq.*, but rather in standard operating procedure manuals and training manuals. Nevertheless, we will treat those documents as "rules" for purposes of judicial review because they constitute the only materials by which the ISP has acted upon the I.C. § 18-8002A(3) authorization for the ISP to "prescribe by rule" testing instruments and methods that are approved by the ISP. In addition, I.C. § 18-8004(4) provides that "[n]otwithstanding any other provision of law or rule of court, the results of any test for alcohol concentration . . . performed . . . by any . . . method approved by the Idaho state police shall be admissible in any proceeding in this state without the necessity of producing a witness to establish the reliability of the testing procedure for examination." The standards for administration of breath tests in the SOP and training manuals have thus been given the force of law in this state and we treat their interpretation, accordingly, as a question of law.

Intoxilyzer 5000 Manual governs. In reaching this determination, we apply well-established standards of statutory interpretation. The first of these principles requires that where two inconsistent statutes appear to apply to the same subject matter, the more specific statute will control over the more general one. *Huyett v. Idaho State University*, 140 Idaho 904, 908, 104 P.3d 946, 950 (2004); *Westway Const., Inc. v. Idaho Transp. Dept.*, 139 Idaho 107, 115, 73 P.3d 721, 729 (2003); *Gooding County v. Wybenga*, 137 Idaho 201, 204, 46 P.3d 18, 21 (2002). Here, the SOP is more general, for it applies to various breath testing devices approved by the ISP, whereas the Intoxilyzer 5000 Manual is written exclusively for that instrument and is therefore less likely to have been written in a way that might sacrifice specific detail for broad applicability. Secondly, giving precedence to the Intoxilyzer 5000 Manual is consistent with the general rule that when two legislative enactments contradict, the most recent enactment controls. *See Owen v. Burcham*, 100 Idaho 441, 444, 599 P.2d 1012, 1015 (1979); *State v. Betterton*, 127 Idaho 562, 564, 903 P.2d 151, 153 (Ct. App. 1995); *State v. Galaviz*, 104 Idaho 328, 331, 658 P.2d 999, 1002 (Ct. App. 1983). The ISP requirements that had been most recently established at the time of the hearing are those in the Intoxilyzer 5000 Manual, which was updated more recently than the SOP. For these reasons, to the extent that the SOP and the Intoxilyzer 5000 Manual are incongruous, we hold that the Intoxilyzer 5000 Manual governs.

ITD argues that even if there was not compliance with the monitoring standards adopted by the ISP, the test results in this case should be deemed valid because the Intoxilyzer 5000 detects mouth alcohol[4] and will notify the operator that the breath test is invalid if mouth alcohol is in fact present. The ITD does not cite, however, to anything in either the SOP or the manual that says that, nor to any evidence in the record that supports this assertion. Instead, the ITD directs our attention to *Charan*, 132 Idaho at 342-43, 971 P.2d at 1166-67, where at trial there was uncontroverted expert testimony that the Intoxilyzer 5000 reports when mouth alcohol is present. We held that this expert testimony provided a foundation on the particular breath test's reliability sufficient to allow admission of the test results into evidence despite the breath test operator's alleged failure to properly monitor the test subject. *Charan* does not support the

---

[4] The introduction of mouth alcohol, which can create inaccurate breath test results, appears to be the primary concern behind not allowing test subjects to engage in certain activities during the monitoring period.

6

ITD's position here, however, because in *Charan* we emphasized that our decision was "not a holding that, as a matter of law, Intoxilyzer 5000 tests are admissible without the 15-minute observation mandated by compliance with the Operator's Training Manual." *Id.* at 343, 971 P.2d at 1167. We further explained:

> We hold only that the *uncontroverted* testimony of Officer Bones in this case provided sufficient foundation for admission of the evidence. Where compliance with approved procedures for test administration is not shown, it will be necessary for trial courts to determine whether foundational standards have been met by alternative means based on the evidence presented in each case.

*Id.* at 343-44, 971 P.2d at 1167-68. There is no such expert testimony in the record here that could allow a finding that Schroeder's breath tests were valid notwithstanding the officer's noncompliance with prescribed procedures. The ITD's argument is inconsistent with both the SOP and the Intoxilyzer 5000 Training Manual which, by requiring a 15-minute monitoring period, implicitly indicate that the Intoxilyzer 5000's capability to detect mouth alcohol cannot be relied upon, in every instance, to detect mouth alcohol that may result from belching, regurgitation, or other sources. It is also inconsistent with the SOP's directive that the operator must restart the monitoring period "[i]f mouth alcohol is suspected or indicated." This provision indicates that mouth alcohol may be legitimately suspected even if it is not indicated by the testing instrument. Therefore, in the absence of expert testimony that addresses the validity of a particular test and is subject to cross-examination, the ITD's argument would simply eviscerate the 15-minute monitoring requirement.

For the above reasons, we conclude that the hearing officer erred in holding that the 15-minute monitoring period need not be restarted when there is a belch that is not accompanied by regurgitation, for that holding is inconsistent with the Intoxilyzer 5000 Manual.

At his hearing, Schroeder testified that he belched several times during the monitoring period in between his two blows into the instrument. An audio recording of that period tends to corroborate Schroeder's testimony. In the recording Schroeder is heard to apologize at several points prior to the tests, apparently for belching, followed by the administering officer's acknowledgement of his apology. At least once, the belch for which Schroeder is apologizing can be plainly heard. The officer did not testify at the hearing, and Schroeder's evidence is not controverted. Therefore, we conclude that Schroeder met his burden of demonstrating that the breath test was not performed in compliance with standards adopted by the ISP.

7

Since Schroeder's breath test was not administered in accordance with ISP requirements, and since no expert testimony was admitted at trial sufficient to establish the reliability of the test results despite the procedural deficiencies, Schroeder's license suspension must be set aside.

**B.      Attorney Fees**

Schroeder asks for costs and attorney fees, but cites no legal basis for his request. A party requesting an award of attorney fees must cite authority allowing such an award. *SE/Z Const., L.L.C. v. Idaho State University*, 140 Idaho 8, 15, 89 P.3d 848, 855 (2004); *MDS Investments, L.L.C. v. State*, 138 Idaho 456, 465, 65 P.3d 197, 206 (2003); *Warren v. Sharp*, 139 Idaho 599, 606, 83 P.3d 773, 780 (2003). Because Schroeder has presented no legal authority permitting such an award in this case, we will not consider it.

### III.

### CONCLUSION

The district court's decision affirming the hearing officer's order upholding the administrative suspension of Schroeder's driver's license is reversed, and the matter is remanded to the ITD for action consistent with this opinion. Costs on appeal to the appellant.

Judge PERRY and Judge GRATTON **CONCUR.**