IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 42040

| KEVIN RICHARD WERNECKE, | ) | 2015 Opinion No. 16 |
| | ) | |
| Plaintiff-Appellant, | ) | Filed: March 30, 2015 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| STATE OF IDAHO, IDAHO | ) | |
| TRANSPORTATION DEPARTMENT, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Appeal from the District Court of the Second Judicial District, State of Idaho, Latah County. Hon. John R. Stegner, District Judge.

Decision of the district court, acting in its appellate capacity, affirming the administrative suspension of driver's license, affirmed.

Danny J. Radakovich, Lewiston, for appellant.

Edwin L. Litteneker, Special Deputy Attorney General, Lewiston, for respondent.

_____

GRATTON, Judge

Kevin Richard Wernecke appeals from the district court's decision upon judicial review affirming the Idaho Transportation Department's order suspending his driver's license. He asserts there was insufficient legal cause to stop him and to require a breath test. He also asserts that his single breath sample was insufficient to suspend his driver's license pursuant to the Idaho State Police Standard Operating Procedures. We affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Wernecke was stopped for driving left of the centerline for approximately half of a block. The officer who stopped Wernecke noticed the smell of alcohol coming from the vehicle and that Wernecke's eyes were glassy and bloodshot. Wernecke admitted to consuming alcohol and the officer directed Wernecke to undergo a set of field sobriety tests. Wernecke failed the horizontal gaze nystagmus test. The officer then requested that Wernecke perform an alphabet and

1

counting test, which Wernecke successfully completed. The officer informed Wernecke that because of the odor of alcohol and failure of the gaze nystagmus test, a breath test would be administered. Initially, Wernecke produced an insufficient sample and the officer provided further instruction on how to use the breath testing device. Wernecke responded, "I'm fifty-five years old. I'm a smoker. I only have so much air in my lungs." Yet, on his second attempt, Wernecke produced a sufficient result of 0.167 blood alcohol concentration (BAC). A third sample was then attempted, but registered as insufficient. At that point, the officer arrested Wernecke for driving under the influence of alcohol. Idaho Code § 18-8004. As a result of the single blow registering a 0.167 reading, Wernecke's license was suspended by the Idaho Transportation Department (ITD) for ninety days.

Wernecke requested an administrative hearing to contest his administrative license suspension (ALS). Wernecke raised an exhaustive list of challenges to his license suspension at the administrative hearing, which was conducted over the telephone. The hearing officer rejected each of these contentions and sustained the ninety-day license suspension. Wernecke petitioned for judicial review by the district court. The district court affirmed the hearing officer's decision, finding that the hearing officer appropriately made credibility determinations as to Wernecke's conduct in the breath testing procedure and concluding that the failure to provide a second sample was attributable to Wernecke. Wernecke again appeals.[1]

## II.

## ANALYSIS

The administrative license suspension statute, I.C. § 18-8002A, requires that the ITD suspend the driver's license of a driver who has failed a BAC test administered by a law enforcement officer. The period of suspension is ninety days for a driver's first failure of an evidentiary test and one year for any subsequent test failure within five years. I.C. § 18-8002A(4)(a). A person who has been notified of an ALS may request a hearing before a hearing officer designated by the ITD to contest the suspension. I.C. § 18-8002A(7). At the administrative hearing, the burden of proof rests upon the driver to prove any of the grounds to vacate the suspension. I.C. § 18-8002A(7); *Kane v. State, Dep't of Transp.*, 139 Idaho 586, 590,

---

[1]     A stay of Wernecke's license suspension was ordered pending the administrative hearing and written findings of fact and conclusions of law and order issued by the hearing officer. A stay was also ordered pending judicial review.

83 P.3d 130, 134 (Ct. App. 2003). The hearing officer must uphold the suspension unless he or she finds, by a preponderance of the evidence, that the driver has shown one of several grounds enumerated in I.C. § 18-8002A(7) for vacating the suspension. Those grounds include:

> (a) The peace officer did not have legal cause to stop the person; or
>
> (b) The officer did not have legal cause to believe the person had been driving or was in actual physical control of a vehicle while under the influence of alcohol, drugs or other intoxicating substances in violation of the provisions of section 18-8004, 18-8004C or 18-8006, Idaho Code; or
>
> (c) The test results did not show an alcohol concentration or the presence of drugs or other intoxicating substances in violation of section 18-8004, 18-8004C or 18-8006, Idaho Code; or
>
> (d) The tests for alcohol concentration, drugs or other intoxicating substances administered at the direction of the peace officer were not conducted in accordance with the requirements of section 18-8004(4), Idaho Code, or the testing equipment was not functioning properly when the test was administered; or
>
> (e) The person was not informed of the consequences of submitting to evidentiary testing as required in subsection (2) of this section.

I.C. § 18-8002A(7).

An ITD administrative hearing officer's decision is subject to challenge through a petition for judicial review. I.C. § 18-8002A(8); *Kane*, 139 Idaho at 589, 83 P.3d at 133. The Idaho Administrative Procedures Act (IDAPA) governs judicial review of the ITD decisions to deny, cancel, suspend, disqualify, revoke, or restrict a person's driver's license. *See* I.C. §§ 49-201, 49-330, 67-5201(2), 67-5270. In an appeal from the decision of the district court acting in its appellate capacity under IDAPA, this Court reviews the agency record independently of the district court's decision. *Marshall v. Idaho Dep't of Transp.*, 137 Idaho 337, 340, 48 P.3d 666, 669 (Ct. App. 2002). This Court does not substitute its judgment for that of the agency as to the weight of the evidence presented. I.C. § 67-5279(1); *Marshall*, 137 Idaho at 340, 48 P.3d at 669. This Court instead defers to the agency's findings of fact unless they are clearly erroneous. *Castaneda v. Brighton Corp.*, 130 Idaho 923, 926, 950 P.2d 1262, 1265 (1998); *Marshall*, 137 Idaho at 340, 48 P.3d at 669. In other words, the agency's factual determinations are binding on the reviewing court, even where there is conflicting evidence before the agency, so long as the determinations are supported by substantial and competent evidence in the record. *Urrutia v. Blaine County, ex rel. Bd. of Comm'rs*, 134 Idaho 353, 357, 2 P.3d 738, 742 (2000); *Marshall*, 137 Idaho at 340, 48 P.3d at 669.

3

This Court may overturn an agency's decision where its findings, inferences, conclusions, or decisions: (a) violate statutory or constitutional provisions; (b) exceed the agency's statutory authority; (c) are made upon unlawful procedure; (d) are not supported by substantial evidence in the record; or (e) are arbitrary, capricious, or an abuse of discretion. I.C. § 67-5279(3). The party challenging the agency decision must demonstrate that the agency erred in a manner specified in I.C. § 67-5279(3) and that a substantial right of that party has been prejudiced. *Price v. Payette County Bd. of County Comm'rs*, 131 Idaho 426, 429, 958 P.2d 583, 586 (1998); *Marshall*, 137 Idaho at 340, 48 P.3d at 669.

## A.     Legal Cause

Wernecke argues the arresting officer lacked legal cause to stop him and lacked legal cause to believe he was driving or was in actual physical control of a vehicle while under the influence of alcohol. We note initially that under I.C. § 18-8002A(7), it was Wernecke's burden to present evidence affirmatively showing that the officer lacked legal cause to stop Wernecke's vehicle or the officer lacked legal cause to believe Wernecke was driving under the influence. *Wheeler v. Idaho Transp. Dep't*, 148 Idaho 378, 382, 223 P.3d 761, 765 (Ct. App. 2009).

### 1.     Legal cause for stop

Wernecke argues the evidence did not support a finding that the officer had legal cause to stop him. A traffic stop by an officer constitutes a seizure of the vehicle's occupants and implicates the Fourth Amendment's prohibition against unreasonable searches and seizures. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979); *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). Under the Fourth Amendment, an officer may stop a vehicle to investigate possible criminal behavior if there is a reasonable and articulable suspicion that the vehicle is being driven contrary to traffic laws. *United States v. Cortez*, 449 U.S. 411, 417 (1981); *State v. Flowers*, 131 Idaho 205, 208, 953 P.2d 645, 648 (Ct. App. 1998). The reasonableness of the suspicion must be evaluated upon the totality of the circumstances at the time of the stop. *State v. Ferreira*, 133 Idaho 474, 483, 988 P.2d 700, 709 (Ct. App. 1999). The reasonable suspicion standard requires less than probable cause but more than mere speculation or instinct on the part of the officer. *Id.* An officer may draw reasonable inferences from the facts in his or her possession, and those inferences may be drawn from the officer's experience and law enforcement training. *State v. Montague*, 114 Idaho 319, 321, 756 P.2d 1083, 1085 (Ct. App. 1988). Suspicion will not be found to be justified if the conduct observed by the officer

fell within the broad range of what can be described as normal driving behavior. *Atkinson*, 128 Idaho at 561, 916 P.2d at 1286.

The hearing officer properly concluded that Wernecke failed to prove the arresting officer lacked legal cause to stop Wernecke. In the arresting officer's probable cause affidavit, the officer explained that he stopped Wernecke for driving in the left lane. The video recording of the stop of Wernecke's vehicle further reveals that the arresting officer questioned Wernecke as to why he was driving down the wrong side of the street and explained that he could have passed Wernecke on the right. While Wernecke does not dispute the officer's observations and acknowledges that he drove consistent with the observations, he argues there is an explanation for his driving pattern. Specifically, he argues that the large size of his vehicle, the width of the road, and vehicles parked on the side of the road caused him to take a wide turn and a large pothole in the road required him to drive left of the center of the roadway. However, the existence of an alternative innocent explanation does not negate the fact that the officer had legal cause to believe Wernecke committed a driving offense. *See State v. Rader*, 135 Idaho 273, 276, 16 P.3d 949, 952 (Ct. App. 2000) (finding that the existence of alternative explanations did not negate the officer's reasonable suspicion). Accordingly, we uphold the hearing officer's finding that there was legal cause for the stop.

### 2. Legal cause to believe Wernecke was driving under the influence

Wernecke next argues the evidence does not support a finding that the officer had legal cause to believe he was driving while under the influence of alcohol and hence was not justified in requesting that Wernecke submit to a BAC test.

Wernecke points out that he correctly performed the alphabet test and the counting test.[2] Wernecke also contends that there was no indication from the video recording that he failed the gaze nystagmus evaluation. Wernecke argues that because he correctly performed two out of three field sobriety tests, there was not adequate cause to request that he submit to an evidentiary test.

We conclude that the officer had legal cause to administer an evidentiary test. While questioning Wernecke, the officer detected a strong odor of an alcoholic beverage and observed

---

[2]     The officer required Wernecke to perform an alphabet and counting test in lieu of the standard balance tests because Wernecke told the officer his sense of balance was such that he could not perform any balance tests.

5

that Wernecke's eyes were glassy and bloodshot and that Wernecke exhibited slurred speech and an impaired memory. Additionally, Wernecke informed the officer that he had been consuming alcohol earlier that evening and failed the horizontal gaze nystagmus test. While Wernecke argues that it is questionable that he failed the gaze nystagmus test, there is nothing in the record to contradict the officer's sworn statement. Moreover, it is clear from the video recording that Wernecke repeatedly failed to follow the officer's directions as he administered the test. The record does not support the conclusion that Wernecke passed the gaze nystagmus test. There was more than adequate evidence giving the officer legal cause to believe that Wernecke was driving under the influence and to administer an evidentiary breath test. Therefore, the hearing officer properly concluded that Wernecke did not meet his burden of proving that the officer lacked legal cause to believe Wernecke was driving under the influence of alcohol.

**B.      Breath Test Result**

Wernecke next contends that the hearing officer erred in finding that the suspension of his driving privileges should be sustained. Specifically, he argues that an insufficient number of valid breath samples were obtained per the testing procedures and that "the hearing officer improperly taxed Mr. Wernecke with the effect of the two (2) failed breath samples."

Pursuant to I.C. § 18-8004(4), the Idaho State Police are charged with promulgating standards for administering tests for alcohol content. *State v. DeFranco*, 143 Idaho 335, 337, 144 P.3d 40, 42 (Ct. App. 2006). To carry out the authority conferred by that statute, the ISP issued operating manuals as well as standard operating procedures (SOP) for the maintenance and operation of breath testing equipment. *In re Mahurin*, 140 Idaho 656, 658, 99 P.3d 125, 127 (Ct. App. 2004). Noncompliance with these procedures is a ground for vacating an ALS under I.C. § 18-8002A(7)(d). *Mahurin*, 140 Idaho at 658-59, 99 P.3d at 127-28. Here, we address the SOP in effect at the time of Wernecke's breath tests.

Wernecke first asserts that there must be two valid breath samples in order to have a complete breath alcohol test and because Wernecke only produced one valid sample (and two insufficient samples), there was no complete breath alcohol test. The applicable SOP for breath alcohol testing provided:

> **A complete breath alcohol test includes two (2)** valid breath samples taken
> during the testing sequence and preceded by air blanks.

6

> **NOTE:** A deficient or insufficient sample does not automatically invalidate a test sample.

> 6.2.1   If the subject/individual fails or refuses to provide a duplicate, adequate sample as requested by the Operator, the single test result shall be considered valid.

6.0 SOP, Section 6.2. The SOP further indicates that where only a single test result can be obtained, it is still considered valid, "**provided** the failure to supply the requested samples was the fault of the subject/individual and not the Operator." Section 6.2.4. The SOP clearly contemplates a situation in which only one breath sample can be obtained from the subject without invalidating the test result. Thus, one evidentiary test sample indicating breath alcohol content in excess of .08 may be sufficient evidence of a violation of I.C. § 18-8004 for purposes of an ALS pursuant to I.C. § 18-8002A(7). *See* SOP, Section 6.2.4.

Wernecke next asserts that it is questionable whether or not the officer gave him sufficient time to provide a second breath sample on his third attempt before terminating the testing process. He also contends that pursuant to the breath testing device's reference manual, the officer should have used a manual test mode of operation when Wernecke could not blow a sufficient amount to activate the automatic test procedure. Wernecke did not raise either of these arguments at the administrative hearing. Generally, issues not raised below may not be considered for the first time on appeal. *State v. Fodge*, 121 Idaho 192, 195, 824 P.2d 123, 126 (1992).

Lastly, Wernecke argues that he sufficiently articulated to the officer that he did not have sufficient breath to complete two breath samples, and thus his failure to supply the requested samples was not his fault. Wernecke relies on *Helfrich v. State*, 131 Idaho 349, 955 P.2d 1128 (Ct. App. 1998) to support his argument that the district court's decision should be reversed.

The driver in *Helfrich* had her license suspended for refusing to submit to evidentiary testing. *Helfrich*, 131 Idaho at 350, 955 P.2d at 1129. At the time of her testing, the officer told her that she was taking the test incorrectly and needed to blow air through the tube for a longer period of time. She informed the officer that she was blowing all the air she could blow. *Id.* at 349, 955 P.2d at 1128. After several deficient readings, the officer concluded that Helfrich did not want to complete the test and her failed efforts constituted a refusal. *Id.* at 350, 955 P.2d at 1129. At her refusal hearing, the officer testified that Helfrich would either briefly spurt air into

the tube or would not blow long enough to complete the test. *Id*. at 349, 955 P.2d at 1128. Helfrich testified that she suffered from bronchitis at the time of her arrest and therefore could not successfully complete the breathalyzer test. *Id*. at 350, 955 P.2d at 1129.

On Helfrich's appeal from the order suspending her license, this Court held the officer's decision to treat her actions as a refusal may not be upheld if she proves that she suffered from a physical impediment which prevented her from successfully completing the breath test. *Id*. at 352, 955 P.2d at 1131. We reasoned that a driver may be physically unable to complete the breath test because he or she suffers from an illness. Although Helfrich did not specifically state that she had bronchitis, we held that she had sufficiently articulated a physical inability to complete the task so as to put the officer on notice that a different test should be utilized when she told the officer that she was doing the best she could and blowing all the air she had. *Id*. at 351-52, 955 P.2d at 1130-31. Further, we noted that drivers may suffer from an illness that prevents them from completing the test that is still undiagnosed, and "[i]n such circumstances, the suspect could hardly be required to inform the officer of the name of the physical condition that was unknown at the time." *Id*.

Wernecke likens his situation to that of *Helfrich* in that he did communicate that he was having difficulty completing the test. However, unlike the driver in *Helfrich* who never provided a valid breath sample, Wernecke was able to provide a sufficient breath sample, which registered as 0.167 BAC. Therefore, the circumstances and holding in *Helfrich* do not apply to this case.

In addition, the ITD asserts that the refusal analysis in *Helfrich* under I.C. § 18-8002 does not apply in the ALS setting under I.C. §18-8002A for failing a breath test. In support of this argument, the ITD points to the differing burdens of the driver in each case, respectively. The driver's burden in a refusal case, pursuant to I.C. § 18-8002(3), is to demonstrate that the driver's actions in declining to submit to an evidentiary test should not be considered a refusal. However, the driver's burden in an ALS case, pursuant to I.C. § 18-8002A(7), is to demonstrate that the driver did not fail the evidentiary breath test, that there was a problem in the administration of the breath test, or that the breath testing equipment was not properly functioning. Thus, the driver is allowed to show cause as to why a breath test was refused in a refusal hearing, but not in an ALS hearing where, as here, one breath sample was given and was over the legal limit. Therefore, in this case Wernecke was required to show that his inability to complete the test was due to the fault of the officer or the breath testing equipment, which he failed to do.

8

We agree with the ITD. When a driver is unable to produce even a single valid sample, the driver's failed efforts may constitute a refusal and *Helfrich* may apply. However, where a driver is able to produce a valid sample, a second sample is not required where such failure is not the fault of the officer or the testing equipment. Thus, a driver's reasons for his or her inability to provide a second sample are irrelevant. Here, Wernecke initially provided an insufficient sample, and despite his statement to the officer articulating his difficulty in completing the test, he was able to produce a valid sample on his second attempt. On Wernecke's third attempt, he again provided an insufficient sample, at which point the officer terminated the testing procedure. The officer was not required to make continuous efforts to obtain a second valid sample. Wernecke's license was not suspended for refusing the test, but for failing the test in the one sample that he did provide. Wernecke has failed to show that his insufficient samples were due to the fault of the officer or the testing equipment.

## III.

## CONCLUSION

Wernecke has not shown that the officer lacked legal cause to stop his vehicle or to believe he was driving under the influence of alcohol. Furthermore, Wernecke has not demonstrated that the failure to obtain a sufficient number of valid breath samples was the officer's fault. Accordingly, we affirm the district court's decision upon judicial review affirming the ITD's order suspending Wernecke's driver's license after he failed a BAC test.

Chief Judge MELANSON and Judge LANSING **CONCUR.**