IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 38335

| REBECCA S. WILKINSON, | ) | 2011 Opinion No. 69 |
|---|---|---|
| | ) | |
| Petitioner-Appellant, | ) | Filed: November 17, 2011 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| STATE OF IDAHO, DEPARTMENT OF | ) | |
| TRANSPORTATION, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Blaine County.  Hon. Robert J. Elgee, District Judge.

Order of district court affirming decision of hearing officer suspending driver's license, <u>affirmed</u>.

Brian E. Elkins, P.C., Ketchum, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Timothy J. Stover, Special Deputy Attorney General, Twin Falls, for respondent.  Timothy J. Stover argued.

_____

SCHWARTZMAN, Judge Pro Tem

Rebecca S. Wilkinson appeals from the district court's order affirming the Idaho Transportation Department's suspension of her driver's license. We affirm.

## I.

## BACKGROUND

On October 11, 2009, Police Officer Garth Davis arrested Wilkinson for driving under the influence of alcohol and transported her to the Blaine County Public Safety Building. Wilkinson agreed to submit to a breath test to determine her blood alcohol concentration.  She was taken to a small room, informally known as the "intox room," to have the tests conducted. The test results indicated a BAC of .165 and .151, respectively, and Wilkinson was charged with driving under the influence (DUI).  Pursuant to Idaho Code §§ 18-8002 and 18-8002A, Officer Davis also served Wilkinson with a notice of suspension of her driver's license.

Wilkinson, through counsel, requested a hearing with the Idaho Transportation Department (ITD) relative to the administrative suspension of her driver's license. There were two hearings held, the first one on December 1, 2009, which Officer Davis was unable to attend. At the hearing, Wilkinson argued that her license suspension should be vacated because Officer Davis did not comply with the fifteen-minute monitoring period requirement prior to the administration of the breath tests. The hearing officer sustained the suspension of Wilkinson's driving privileges, and in response, Wilkinson filed a request for reconsideration. Another hearing was held on January 26, 2010, before the same hearing officer, at which Officer Davis testified. Thereafter, the hearing officer once again sustained the suspension of Wilkinson's driving privileges.

Wilkinson then filed a petition for judicial review. The district court affirmed her license suspension. Wilkinson timely appeals the district court's order.

## II.

## DISCUSSION

The Idaho Administrative Procedures Act (IDAPA) governs the review of ITD decisions to deny, cancel, suspend, disqualify, revoke, or restrict a person's driver's license. *See* I.C. §§ 49-201, 49-330, 67-5201(2), 67-5270. In an appeal from the decision of the district court acting in its appellate capacity under IDAPA, this Court reviews the agency record independently of the district court's decision. *Marshall v. Idaho Dep't of Transp.,* 137 Idaho 337, 340, 48 P.3d 666, 669 (Ct. App. 2002). This Court does not substitute its judgment for that of the agency as to the weight of the evidence presented. I.C. § 67-5279(1); *Marshall,* 137 Idaho at 340, 48 P.3d at 669. This Court instead defers to the agency's findings of fact unless they are clearly erroneous. *Castaneda v. Brighton Corp.,* 130 Idaho 923, 926, 950 P.2d 1262, 1265 (1998); *Marshall,* 137 Idaho at 340, 48 P.3d at 669. In other words, the agency's factual determinations are binding on the reviewing court, even where there is conflicting evidence before the agency, so long as the determinations are supported by substantial and competent evidence in the record. *Urrutia v. Blaine County, ex rel. Bd. of Comm'rs,* 134 Idaho 353, 357, 2 P.3d 738, 742 (2000); *Marshall,* 137 Idaho at 340, 48 P.3d at 669.

The Court may overturn an agency's decision where its findings, inferences, conclusions, or decisions: (a) violate statutory or constitutional provisions; (b) exceed the agency's statutory authority; (c) are made upon unlawful procedure; (d) are not supported by substantial evidence in

2

the record; or (e) are arbitrary, capricious, or an abuse of discretion. I.C. § 67-5279(3). The party challenging the agency decision must demonstrate that the agency erred in a manner specified in I.C. § 67-5279(3) and that a substantial right of that party has been prejudiced. *Price v. Payette County Bd. of County Comm'rs*, 131 Idaho 426, 429, 958 P.2d 583, 586 (1998); *Marshall,* 137 Idaho at 340, 48 P.3d at 669. If the agency's decision is not affirmed on appeal, "it shall be set aside . . . and remanded for further proceedings as necessary." I.C. § 67-5279(3).

The administrative license suspension (ALS) statute, I.C. § 18-8002A, requires that ITD suspend the driver's license of a driver who has failed a BAC test administered by a law enforcement officer. The period of suspension is ninety days for a driver's first failure of an evidentiary test and one year for any subsequent test failure within five years. I.C. § 18-8002A(4)(a). A person who has been notified of an ALS may request a hearing before a hearing officer designated by ITD to contest the suspension. I.C. § 18-8002A(7); *Kane v. State, Dep't of Transp.,* 139 Idaho 586, 590, 83 P.3d 130, 134 (Ct. App. 2003). The hearing officer must uphold the suspension unless he or she finds, by a preponderance of the evidence, that the driver has shown one of several grounds enumerated in I.C. § 18-8002A(7) for vacating the suspension. Those grounds are:

> (a)  The peace officer did not have legal cause to stop the person; or
> (b)  The officer did not have legal cause to believe the person had been driving or was in actual physical control of a vehicle while under the influence of alcohol, drugs or other intoxicating substances in violation of the provisions of section 18-8004, 18-8004C or 18-8006, Idaho Code; or
> (c)  The test results did not show an alcohol concentration or the presence of drugs or other intoxicating substances in violation of section 18-8004, 18-8004C or 18-8006, Idaho Code; or
> (d)  The tests for alcohol concentration, drugs or other intoxicating substances administered at the direction of the peace officer were not conducted in accordance with the requirements of section 18-8004(4), Idaho Code, or the testing equipment was not functioning properly when the test was administered; or
> (e)  The person was not informed of the consequences of submitting to evidentiary testing as required in subsection (2) of this section.

I.C. § 18-8002A(7). The hearing officer's decision is subject to challenge through a petition for judicial review. I.C. § 18-8002A(8); *Kane*, 139 Idaho at 589, 83 P.3d at 133.

Wilkinson contends that the ALS hearing officer's conclusion that Officer Davis properly observed her during the fifteen-minute monitoring period prior to the administration of the breath

3

tests was in violation of statutory provisions because the process was not conducted by a method approved by the Idaho State Police pursuant to I.C. § 18-8004(4). *See* I.C. § 18-8002A(7)(d). Wilkinson further contends that the hearing officer's conclusion was "not supported by substantial evidence on the record as a whole" and was "arbitrary, capricious, or an abuse of discretion." I.C. § 67-5279(3)(d), (e). Idaho Code § 18-8004(4) provides that tests to determine alcohol concentration of blood, urine, or breath must be performed in facilities or by methods approved by the Idaho State Police and in compliance with standards set by the State Police. *Mahurin v. State Dep't of Transp.*, 140 Idaho 656, 658, 99 P.3d 125, 127 (Ct. App. 2004). To carry out the authority conferred by that statute, the State Police issued operating manuals establishing procedures for the maintenance and operation of breath test equipment. *See* IDAHO ADMIN. CODE 11.03.01.014. Noncompliance with these procedures is one of the grounds for vacating an administrative license suspension under I.C. § 18-8002A(7)(d). *Mahurin*, 140 Idaho at 658-59, 99 P.3d at 127-28.

> The operator's training manual for the Intoxilyzer 5000[1] reads in part:
>
> Monitor the subject for 15 minutes. During this time the subject may not smoke, consume alcohol, eat, belch, vomit, use chewing tobacco, or have gum or candy in the mouth. If belching or vomiting does occur or something is found in the mouth, have it removed and wait an additional 15 minutes.
>
> OPERATING PROCEDURE FOR A BREATH TEST:
> Observe subject for 15 minutes.
> The subject should not drink, smoke or use any type of oral medication during this time.

Idaho State Police, Intoxilyzer 5000: Operator's Training Manual (Rev. March 2007) (emphasis omitted).

The State Police's standard operating procedures for breath alcohol testing also provide that "[p]rior to evidential breath alcohol testing the subject must be monitored for fifteen (15)

---

[1] The Idaho State Police has not issued a standard operating procedure for the Intoxilyzer 5000EN, the breath test equipment used in this case. *See Masterson v. Idaho Dep't of Transp.*, 150 Idaho 126, 129, 244 P.3d 625, 628 (Ct. App. 2010).

minutes. . . . During the monitoring period the subject should not be allowed to smoke, drink, eat, or belch/burp."[2] Standard Operating Procedure, Breath Alcohol Testing, Pg. 6.

This Court recently addressed the observation requirement of the fifteen-minute monitoring period in *Bennett v. State,* 147 Idaho 141, 206 P.3d 505 (Ct. App. 2009). We noted that the purpose of the monitoring period is "to rule out the possibility that alcohol or other substances have been introduced into the subject's mouth from the outside or by belching or regurgitation." *Id.* at 144, 206 P.3d at 508; *State v. Carson,* 133 Idaho 451, 453, 988 P.2d 225, 227 (Ct. App. 1999). To satisfy the observation requirement, the level of surveillance "must be such as could reasonably be expected to accomplish" that purpose. *Bennett,* 147 Idaho at 144, 206 P.3d at 508. Furthermore, in *State v. DeFranco*, 143 Idaho 335, 338, 144 P.3d 40, 43 (Ct. App. 2006), this Court commented that the fifteen-minute monitoring period is not an onerous burden and that "[t]his foundational standard ordinarily will be met if the officer stays in close physical proximity to the test subject so that the officer's senses of sight, smell and hearing can be employed." Therefore, "[s]o long as the officer is continually in [a] position to use his senses, not just sight, to determine that the defendant did not belch, burp or vomit during the [monitoring] period, the observation complies with the training manual instructions." *Bennett,* 147 Idaho at 144, 206 P.3d at 508; *cf. State v. Carson,* 133 Idaho 451, 988 P.2d 225 (holding that the arresting officer's ability to supplement his visual observation of Carson with his other senses was substantially impaired by numerous sources of noise, the officer's own hearing impairment, and his position facing away from Carson while transporting him during the monitoring period).

On appeal, Wilkinson adopts the argument from *Carson* and contends that numerous things impeded Officer Davis's ability to supplement his visual observation with his other senses: the sound from a CD that was playing; Officer Davis's radio earpiece in his ear; the fact that Officer Davis's attention was "diverted" several times; and that Officer Davis was not close enough to hear or smell a burp or belch from Wilkinson. Wilkinson's argument was heard and rejected by the hearing officer, who reviewed all the evidence, including a DVD recording,

---

[2] According to The New Oxford American Dictionary, "belch" means to "emit gas noisily from the stomach through the mouth." *See* NEW OXFORD AMERICAN DICTIONARY 150 (2001). "Burp" means to "noisily release air from the stomach through the mouth; belch." *Id.* at 232. Compare with "vomit" which means to "eject matter from the stomach through the mouth," and "regurgitate," which is defined as "bring[ing] (swallowed food) up again into the mouth. *Id.* at 1892, 1435.

which captured audio and video of the entire event as it occurred. He found there were no obstructions or distractions where the officer could not have used any of his senses to monitor Wilkinson in the fifteen minutes prior to her breath test. Furthermore, the hearing officer found that "[e]ven if Officer Davis's back was towards Wilkinson multiple times during the monitoring period, Officer Davis had the capability of using other senses to monitor Wilkinson."

Wilkinson also points to the officer's testimony to show that the observation requirement of the fifteen-minute monitoring period was not satisfied. Davis testified that because he had his back turned to Wilkinson several times, he did not believe the observation requirement of the monitoring period was satisfied.[3] As set out above, however, the test is not whether Officer Davis "stared fixedly" at Wilkinson for fifteen minutes before the test, or even if he kept her in his peripheral vision. *See Bennett*, 147 Idaho at 144, 206 P.3d at 508. As long as Officer Davis was in a position to use his senses to determine that Wilkinson did not belch, burp, or vomit for the requisite time period, his observation was in compliance with State Police procedure.[4] *Id.*

It should be noted that although constant visual contact is not required, the rule's flexibility is not an open invitation for law enforcement officers to be inattentive or to leave suspects out of their sight for any appreciable period of time. Officer Davis had his back turned to Wilkinson for one minute and fifty seconds of the fifteen-minute period, a length of time that could have voided the test results. Better practice would counsel that officers should attend to suspects to the best of their ability, including visual observation, throughout the entire monitoring period if at all possible. In such cases, the issue presented here could be completely avoided.

---

[3]   In the criminal proceeding, the State stipulated to suppression of the breath test results and dismissed the DUI case against Wilkinson. The State agreed with defense counsel that because Officer Davis had his back turned to Wilkinson multiple times, the monitoring requirement had not been met. The dismissal occurred between the first and second administrative hearings. We note, however, the different evidentiary burden in an ALS proceeding.

[4]   Although the officer did not do so in this case, it would enhance law enforcement procedures to simply ask the suspect if she belched, burped, vomited, or did anything else during the waiting period that might skew the test results. Previous cases have taken note of whether or not the officer addressed such type of question to a subject. *See, e.g.*, *Stump*, 146 Idaho at 861, 203 P.3d at 1260; *Carson*, 133 Idaho at 452, 988 P.2d at 226.

Nevertheless, we cannot say in this case the hearing officer lacked substantial evidence in the record from which to conclude that Officer Davis's surveillance complied with the monitoring requirement of the fifteen-minute waiting period. Officer Davis and Wilkinson were alone in a concrete room designed for DUI breath testing. There were three video cameras capturing the events as they occurred, and the hearing officer reviewed these recordings before making his decision. The DVD shows, as the hearing officer found, that fifteen minutes elapsed between Officer Davis's and Wilkinson's entry into the intox room and the time of Wilkinson's first breath test. The DVD also indicates that the acoustics of the intox room were such that Officer Davis and Wilkinson were able to hear each other clearly. At no point was it necessary for Officer Davis to silence the CD that was playing or ask Wilkinson to raise her voice in order to be heard. Indeed, even the slightest of noises, such as Wilkinson sniffing, can be clearly recognized.

Moreover, a female officer was in the room standing directly behind Wilkinson and patting her down part of the time Officer Davis had his back turned to Wilkinson. We have consistently held that the observations of another officer, even one uncertified in operation of the breath test equipment, can serve as a substitute for a certified officer's observation. *See Utz,* 125 Idaho at 129, 867 P.2d at 1003; *State v. Bradley,* 120 Idaho 566, 569, 817 P.2d 1090, 1093 (Ct. App. 1991). The hearing officer considered this fact, finding that Wilkinson failed to submit any proof that the female officer could not have properly observed her and informed Officer Davis of any irregularities that occurred during the pat down. Furthermore, there was no testimony that Wilkinson ever did in fact belch, burp, or otherwise do anything that would skew the test results.

This Court will not reweigh the evidence and substitute our judgment for that of the hearing officer. *Bennett,* 147 Idaho at 142, 206 P.3d at 506. The hearing officer's conclusion that Officer Davis properly monitored Wilkinson for the requisite time period is supported by substantial evidence in the record. Although Officer Davis's back was turned to Wilkinson on multiple occasions during the fifteen-minute monitoring period, Wilkinson failed to show by a preponderance of the evidence that Officer Davis was not continually in a position to use his senses, not just sight, to monitor Wilkinson. Thus, we affirm the hearing officer's determination that the breath test was carried out in accordance with the Idaho State Police's standard operating procedures and the Idaho Code.

7

### III.

### CONCLUSION

The hearing officer did not enter an order in violation of statutory provisions, unsupported by substantial evidence, or that was arbitrary or capricious. The district court's order affirming the administrative suspension of Wilkinson's driver's license is affirmed.

Judge GUTIERREZ and Judge MELANSON **CONCUR.**