**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 39424**

| | | |
|---|---|---|
| IN THE MATTER OF THE DRIVER'S LICENSE OF JAMES DARRIN BROADFOOT. | ) ) ) | 2012 Unpublished Opinion No. 691 |
| _____ | ) | Filed: October 25, 2012 |
| | ) | |
| JAMES DARRIN BROADFOOT, | ) ) | Stephen W. Kenyon, Clerk |
| Petitioner-Respondent, | ) ) | THIS IS AN UNPUBLISHED OPINION AND SHALL NOT |
| v. | ) ) | BE CITED AS AUTHORITY |
| | ) | |
| IDAHO DEPARTMENT OF TRANSPORTATION, | ) ) | |
| | ) | |
| Respondent-Appellant. | ) ) | |
| _____ | ) | |

Appeal from the District Court of the Second Judicial District, State of Idaho, Latah County. Hon. John R. Stegner, District Judge.

Memorandum opinion of the district court vacating administrative hearing officer's order upholding suspension of driver's license, <u>reversed</u>.

Hon. Lawrence G. Wasden, Attorney General; Edwin L. Litteneker, Special Deputy Attorney General, Lewiston, for appellant. Edwin L. Litteneker argued.

Deborah L. McCormick of McCormick & Rokyta, PLLC; Brian D. Thie of Magyar, Rauch & Thie, PLLC, Moscow, for respondent. Deborah L. McCormick argued.

_____

GUTIERREZ, Judge

The Idaho Transportation Department (ITD) appeals from the district court's memorandum opinion vacating the order of the ITD hearing officer upholding the suspension of James Darrin Broadfoot's driver's license due to failure of an evidentiary test for alcohol concentration. For the reasons set forth below, we reverse the district court's order.

1

## I.

## FACTS AND PROCEDURE

On an early morning in October 2010, at approximately 2:17 a.m., Latah County Sheriff's Deputy Anthony Dahlinger stopped Broadfoot upon suspicion Broadfoot was driving under the influence of alcohol. After Broadfoot failed several field sobriety tests, he was arrested and transported to jail. Upon arriving at the jail, Deputy Dahlinger escorted Broadfoot to a small room set up to conduct a breath alcohol test. During the requisite fifteen-minute monitoring period before administration of the breath alcohol test, which is designed to ensure the absence of mouth alcohol that could affect the accuracy of the test, Deputy Dahlinger advised Broadfoot of his rights pursuant to Idaho law. Deputy Dahlinger then turned toward the breath test machine and, for approximately three minutes prior to administration of the test, focused on preparing the machine. Broadfoot's two breath samples tested .166 and .149, well above the legal limit. The entire monitoring and testing sequence was captured on video via a camera attached to Deputy Dahlinger's person.

Broadfoot's driver's license was suspended pursuant to Idaho Code § 18-8002A(4). He requested a hearing before an ITD hearing officer pursuant to section 18-8002A(7), contending Deputy Dahlinger had not properly observed him for fifteen minutes prior to administration of the breath alcohol content (BrAC) test. Broadfoot also testified he "belched silently" approximately ten seconds prior to providing the first breath sample. Taking into account the evidence presented at the hearing, including the DVD recording of the incident, the hearing officer issued an order, including findings of fact and conclusions of law, concluding there was substantial evidence that the proper procedures had been followed and upholding the administrative suspension of Broadfoot's driver's license.

Broadfoot filed a timely petition for judicial review, and following a hearing on the issue, the district court issued a memorandum opinion holding the hearing officer's order upholding Broadfoot's license suspension was not supported by substantial evidence. The district court vacated the hearing officer's decision and remanded the case. The ITD now appeals.

## II.

## ANALYSIS

The ITD contends the district court erred in vacating the hearing officer's conclusion that Broadfoot failed to meet his burden pursuant to section 18-8002A(7), to show that a sufficient

2

monitoring period was not observed prior to the administration of the BrAC test. Specifically, the ITD contends the hearing officer's conclusion was supported by substantial evidence in the record. The Idaho Administrative Code (IDAPA) governs the review of ITD decisions to deny, cancel, suspend, disqualify, revoke, or restrict a person's driver's license. *See* I.C. §§ 49-201, 49-330, 67-5201(2), 67-5270. In an appeal from the decision of the district court acting in its appellate capacity under IDAPA, this Court reviews the agency record independently of the district court's decision. *Howard v. Canyon Cnty. Bd. of Comm'rs*, 128 Idaho 479, 480, 915 P.2d 709, 710 (1996); *Marshall v. Dep't of Transp.*, 137 Idaho 337, 340, 48 P.3d 666, 669 (Ct. App. 2002). This Court does not substitute its judgment for that of the agency as to the weight of the evidence presented. I.C. § 67-5279(1). Instead, we defer to the agency's findings of fact unless they are clearly erroneous. *Castaneda v. Brighton Corp.*, 130 Idaho 923, 926, 950 P.2d 1262, 1265 (1998); *Marshall*, 137 Idaho at 340, 48 P.3d at 669. In other words, the agency's factual determinations are binding on the reviewing court, even where there is conflicting evidence before the agency, so long as the determinations are supported by substantial competent evidence in the record. *Urrutia v. Blaine Cnty., ex rel. Bd. of Comm'rs*, 134 Idaho 353, 357, 2 P.3d 738, 742 (2000); *Marshall*, 137 Idaho at 340, 48 P.3d at 669.

The Court may overturn an agency's decision where its findings, inferences, conclusions, or decisions: (a) violate statutory or constitutional provisions; (b) exceed the agency's statutory authority; (c) are made upon unlawful procedure; (d) are not supported by substantial evidence in the record; or (e) are arbitrary, capricious, or an abuse of discretion. I.C. § 67-5279(3). The party challenging the agency decision must demonstrate that the agency erred in a manner specified in Idaho Code § 67-5279(3) and that a substantial right of that party has been prejudiced. *Price v. Payette Cnty. Bd. of Cnty. Comm'rs*, 131 Idaho 426, 429, 958 P.2d 583, 586 (1998); *Marshall*, 137 Idaho at 340, 48 P.3d at 669. If the agency's decision is not affirmed on appeal, "it shall be set aside . . . and remanded for further proceedings as necessary." I.C. § 67-5279(2).

The administrative license suspension statute, section 18-8002A, requires the ITD to suspend the driver's license of a driver who fails an alcohol concentration test administered by a law enforcement officer. Section 18-8002A(7) provides that a person who has been served with a notice of suspension after submitting to an evidentiary test may request an administrative hearing on the suspension before a hearing officer designated by the ITD. The statute places the

3

burden of proof on the party requesting the hearing and states the hearing officer shall not vacate the suspension unless he finds, by a preponderance of the evidence, that, among other circumstances:

> (d) The tests for alcohol concentration, drugs or other intoxicating substances administered at the direction of the peace officer *were not conducted in accordance with the requirements of section 18-8004(4)*, Idaho Code, or the testing equipment was not functioning properly when the test was administered . . . .

I.C. § 18-8002A(7)(d) (emphasis added). Idaho Code § 18-8004(4) provides that tests to determine alcohol concentration of blood, urine, or breath must be performed in facilities or by methods approved by the Idaho State Police (ISP) and in compliance with standards set by the ISP. *Wilkinson v. Dep't of Transp.*, 151 Idaho 784, 787, 264 P.3d 680, 683 (Ct. App. 2011); *In Re Mahurin*, 140 Idaho 656, 658, 99 P.3d 125, 127 (Ct. App. 2004). To carry out the authority conferred by that statute, the ISP issues operating manuals establishing procedures for the maintenance and operation of breath test equipment. *See* IDAPA 11.03.01.014. Noncompliance with these procedures constitutes one of the grounds for vacating an administrative license suspension under Idaho Code § 18-8002A(7)(d). *Wilkinson*, 151 Idaho at 787, 264 P.3d at 683; *Mahurin*, 140 Idaho at 658-59, 99 P.3d at 127-28.

The applicable agency rules in effect at the time, the Idaho Standard Operating Procedure Breath Alcohol Testing (SOP), provided in relevant part:[1]

> 6.1 Prior to evidentiary breath alcohol testing, the subject/individual should be monitored for at least fifteen (15) minutes. . . . During the monitoring period the subject/individual should not be allowed to smoke, drink, eat, or belch/burp/vomit/regurgitate.
>
> . . . .
>
> > 6.1.4 During the monitoring period, the Operator must be alert for any event that might influence the accuracy of the breath alcohol test.
> >
> > > 6.1.4.1 The Operator must be aware of the possible presence of mouth alcohol as indicated by the testing instrument. If mouth alcohol is suspected or indicated, the Operator should begin another 15-minute waiting period before repeating the testing sequence.
> > >
> > > 6.1.4.2 If, during the 15-minute waiting period, the subject/individual vomits or regurgitates material from the stomach

---

[1] The procedures in effect at the time were effective August 27, 2010, but have since been revised.

4

into the subject/individual's breath pathway, the 15-minute waiting period must begin again.

6.1.4.3   If there is doubt as to the events occurring during the 15 minute monitoring period, the officer should look at results of the duplicate breath samples for evidence of potential alcohol contamination.

Idaho State Police, IDAHO STANDARD OPERATING PROCEDURE, BREATH ALCOHOL TESTING (Rev. Aug. 2010).

The purpose of the observation requirement of the fifteen-minute monitoring period is to rule out the possibility that alcohol or other substances have been introduced into the subject's mouth from the outside or by belching or regurgitation. *Wilkinson*, 151 Idaho at 787, 264 P.3d at 683; *Bennett v. Dep't of Transp.*, 147 Idaho 141, 144, 206 P.3d 505, 508 (Ct. App. 2009). To satisfy the observation requirement, the level of surveillance must be such as could reasonably be expected to accomplish that purpose. *Wilkinson*, 151 Idaho at 787, 264 P.3d at 683; *Bennett*, 147 Idaho at 144, 206 P.3d at 508. In *State v. DeFranco*, 143 Idaho 335, 338, 144 P.3d 40, 43 (Ct. App. 2006), this Court commented that the fifteen-minute monitoring period is not an onerous burden and "[t]his foundational standard ordinarily will be met if the officer stays in close physical proximity to the test subject so that the officer's senses of sight, smell and hearing can be employed." An officer need not "stare fixedly" at a suspect for fifteen minutes. *Bennett*, 147 Idaho at 144, 206 P.3d at 508. Rather, so long as the officer is continually in a position to use his senses, not just sight, to determine that the defendant did not belch, burp or vomit during the monitoring period, the observation complies with the training manual instructions. *Id.*

At the administrative hearing challenging the suspension of his license, Broadfoot contended Deputy Dahlinger did not properly observe him during the requisite fifteen-minute monitoring period because for approximately three minutes Deputy Dahlinger was across the room from Broadfoot setting up the test machine and reviewing a notebook. Broadfoot testified he "belched silently" approximately ten seconds before the first test was administered, which Deputy Dahlinger was never aware of. The hearing officer issued an order, including findings of fact and conclusions of law, upholding the suspension, noting "Officer Dahlinger's affidavit states the evidentiary test was performed in compliance with Idaho Code and ISP Forensic Services SOPs." Additionally, the hearing officer made the following relevant findings, referencing the video of the incident (Exhibit A):

5

9.      Exhibit A provides during the monitoring period, Officer Dahlinger was in close proxim[ity] to Broadfoot, conversed with Broadfoot, and when programming the Intoxilyzer 5000 EN (based upon the location of the Intoxilyzer 5000 EN and Broadfoot), Officer Dahlinger's side and not his back was towards Broadfoot.

10.      Exhibit A demonstrates Officer Dahlinger had ample opportunity to use all of [his] senses to monitor Broadfoot within ISP Forensic Services SOP § 6.1 requirements.

On appeal, the district court reviewed the facts of cases where this Court has held there was compliance with the fifteen-minute monitoring period, as well as cases where noncompliance was found, and ultimately determined the hearing officer's conclusion, that Deputy Dahlinger sufficiently complied with the requirements of the SOP, was not supported by substantial evidence.  Specifically, the district court found:

> [A]lthough in close-proximity to Broadfoot, for most of the time, Dahlinger was not always in a physical position to visually monitor him, or alternatively, to use both his senses of smell and hearing to accomplish the purpose of the monitoring period. . . .
> 
> From the time Dahlinger stood up to prepare the machine, to the time he turned to face Broadfoot to administer the test, at most, he could use only one of his senses to monitor Broadfoot.  (Video at 3:35:34- 3:39:03).  Unlike the officer in [*State v. Stump*, 146 Idaho 857, 203 P.3d 1256 (Ct. App. 2009)], Dahlinger was not facing the subject for nearly the entire monitoring period.  *Id*.  Rather, he was not looking at Broadfoot and Broadfoot was seated at a right angle from Dahlinger for over three minutes.  *Id*.  During that time, Dahlinger was also preparing the machine, reading the Agency Codes for the machine, typing in information, and looking at a notebook.  *Id*.  Accordingly, Broadfoot was not always visible through Dahlinger's peripheral vision.  Therefore, unlike the officer in *Stump*, Dahlinger was not in a position to use all of his senses to monitor Broadfoot.  By trying to do two things at once, Dahlinger was not able to monitor Broadfoot for any belches, burps or regurgitation that could have affected the validity of the test.
> 
> There was also a loud beeping noise followed by a humming noise in the observation room during those few minutes, apparently coming from the machine.  *Id*.  Those noises interfered with Dahlinger's hearing.  Given Dahlinger's distance from Broadfoot, his sense of smell was also impaired during that period.  Thus, like the situation in [*State v. Carson*, 133 Idaho 451, 988 P.2d 225 (Ct. App. 1999)], the numerous noises and Dahlinger's position prevented him from augmenting his sense of sight with his senses of hearing and smell.  Therefore, contrary to the waiting period in [*State v. Remsburg*, 126 Idaho 338, 882 P.2d 993 (Ct. App. 1994)], here there were conditions in the room that substantially impaired Dahlinger's senses of hearing and smell.

.... It is clear that for over three minutes during the monitoring period, Dahlinger could not visually monitor Broadfoot and at times could not employ more than one of his senses of hearing and smell.

The district court also noted that although Deputy Dahlinger's affidavit indicated he had properly observed the mandatory fifteen-minute monitoring period, an "affidavit alone is insufficient to support a finding that proper procedures were followed." *Bennett*, 147 Idaho at 145, 206 P.3d at 509.

On appeal, the ITD contends the district court erred in finding the hearing officer's conclusion, that Deputy Dahlinger sufficiently complied with the fifteen-minute monitoring period, was not supported by substantial evidence. This Court recently addressed a similar case in *Wilkinson*, 151 Idaho 784, 264 P.3d 680. There, Wilkinson appealed the administrative suspension of her license to the ITD following two positive breath test results, contending the officer administering the test failed to comply with the fifteen-minute monitoring period set forth by the SOP.[2] The hearing officer upheld the suspension and the district court affirmed. It was undisputed that the officer turned his back to Wilkinson several times during the monitoring period, and on appeal to this Court, Wilkinson contended numerous factors impeded the officer's ability to supplement his visual observation with his other senses, including the sound from a CD playing in the small room where the testing took place, the officer's radio earpiece, the fact the officer's attention was diverted several times, and that the officer was not close enough to hear or smell a burp or belch from Wilkinson. We noted the hearing officer reviewed all the evidence, including a video recording on DVD, and found there were no obstructions or distractions where the officer could not have used any of his senses to monitor Wilkinson in the fifteen minutes prior to the breath test. The hearing officer further found that "'[e]ven if [the officer's] back was towards Wilkinson multiple times during the monitoring period, [the officer] had the capability of using other senses to monitor Wilkinson.'" *Id*. at 788, 264 P.3d at 684. In regard to the fact the officer's back was towards Wilkinson for one minute and fifty seconds of the fifteen-minute monitoring period, we noted the test is not whether the officer "stared fixedly" at Wilkinson for fifteen minutes, or even if he kept her in his peripheral vision. *Id*. (citing *Bennett*, 147 Idaho at 144, 206 P.3d at 508). Rather, as long as the officer was in a position to use his senses to

---

[2]     It appears the same version of the SOP was at issue in *Wilkinson* as is at issue in this case.

determine Wilkinson did not belch, burp or vomit for the requisite time period, his observation was in compliance with ISP procedure. *Id*. Although acknowledging this was not the best practice and could have voided the results, we concluded:

> Nevertheless, we cannot say in this case the hearing officer lacked substantial evidence in the record from which to conclude that [the officer's] surveillance complied with the monitoring requirement of the fifteen-minute waiting period. [The officer] and Wilkinson were alone in a concrete room designed for DUI breath testing. There were three video cameras capturing the events as they occurred, and the hearing officer reviewed these recordings before making his decision. . . . The DVD . . . indicates that the acoustics of the intox room were such that [the officer] and Wilkinson were able to hear each other clearly. At no point was it necessary for [the officer] to silence the CD that was playing or ask Wilkinson to raise her voice in order to be heard. Indeed, even the slightest of noises, such as Wilkinson sniffing, can be clearly recognized.

*Id*. at 788-89, 264 P.3d at 684-85.

We also noted there was another officer in the room patting down Wilkinson during part of the time the primary officer had his back turned, and there was no testimony Wilkinson ever belched, burped, or otherwise did anything that would skew the results. Noting the rule that we will not reweigh the evidence and substitute our judgment for that of the hearing officer, we concluded the hearing officer's conclusion, that the officer properly monitored Wilkinson for the requisite time period, was supported by substantial evidence on the record. *Id*. at 789, 264 P.3d at 685. Specifically, we noted that, although the officer's back was turned to Wilkinson on multiple occasions, Wilkinson failed to show by a preponderance of the evidence that the officer was not continually in a position to use his senses, not just sight, to monitor Wilkinson. *Id*.

Having reviewed the video recording in this case, we conclude the hearing officer did not lack substantial evidence in the record from which to conclude Deputy Dahlinger's surveillance complied with the observation requirement of the fifteen-minute monitoring period. In vacating the hearing officer's conclusion, the district court's key finding was that during the time Deputy Dahlinger was preparing the testing machine, he was not always in a physical position to visually monitor Broadfoot, even with his peripheral vision; nor could he use his other senses at this time to accomplish the requisite monitoring because he was standing at the testing machine, preparing the machine, reading the agency codes located on the wall, typing in information, and looking at a notebook. The district court concluded that by "trying to do two things at once, Dahlinger was not able to monitor Broadfoot for any belches, burps or regurgitation that could have affected the

8

validity of the test." Even accepting the district court's finding that Deputy Dahlinger did not have Broadfoot in his sights for the entire time, that Deputy Dahlinger could have used other senses to monitor Broadfoot during this time, as found by the hearing officer, is supported by substantial evidence. While preparing the testing machine, Deputy Dahlinger was literally steps away from Broadfoot, with Broadfoot to Deputy Dahlinger's side, not his back, a finding specifically made by the hearing officer. Certainly Deputy Dahlinger's periphery vision could have aided his monitoring during this time, apart from the instance where he was examining the notebook, which occurred for a very short time. In addition, the district court's finding that the noises made by the machine obliterated Deputy Dahlinger's ability to utilize his other senses, namely his hearing, to monitor Broadfoot is not the only reasonable conclusion from the evidence. Although the district court described the beeping and humming noises made by the machine as "loud," this is not borne out by the DVD recording to the extent the district court found the sounds would have made it impossible for Deputy Dahlinger to listen for any indications of belching or regurgitation. In fact, the noise from the machine is significantly quieter than the voices of both Deputy Dahlinger and Broadfoot as heard earlier in the recording and is only heard intermittently during the three minutes at issue. Further, like in *Wilkinson*, Deputy Dahlinger and Broadfoot were alone in a small concrete room and the recording indicates the acoustics in the room were such that Deputy Dahlinger and Broadfoot were able to hear each other clearly during the time they were conversing. Also similar to *Wilkinson* where we noted Wilkinson could be heard sniffling in the background, an apparent sigh and a yawn, almost certainly from Broadfoot (as any noises from Deputy Dahlinger would have been much louder), can be heard in the background even when Deputy Dahlinger was standing near the beeping testing machine. This fact, combined with the facts the room was quite small and Deputy Dahlinger was never more than a few steps away from Broadfoot, comprises substantial evidence that Deputy Dahlinger was able to employ his sense of hearing during the time he was not looking at Broadfoot, thus, supporting the hearing officer's conclusion that Deputy Dahlinger complied with the observation requirement of the monitoring period.

In addition, although there was testimony from Broadfoot that he "belched silently" approximately ten seconds prior to giving the first breath sample, the hearing officer found this assertion was not credible. Specifically, the hearing officer found the video recording "does not show any movement in Broadfoot's throat, mouth or cheeks to indicate any belching had

occurred." Additionally, the hearing officer noted, "[s]ince Broadfoot's two BrAC results were within 0.02, Broadfoot's alleged belch did not produce any significant amount of mouth alcohol or foreign substance to skew Broadfoot's breath test results." These findings were supported by substantial evidence. *See Peck v. Dep't of Transp.*, 153 Idaho 37, 48-49, 278 P.3d 439, 450-51 (Ct. App. 2012) (deferring to the hearing officer's finding that Peck's testimony, that he had belched during the monitoring period, was not credible).

In addition to *Wilkinson*, our decision in *State v. Remsburg*, 126 Idaho 338, 882 P.2d 993 (Ct. App. 1994) is instructive. There, during the last seven minutes preceding administration of the breath test, the officer programmed the testing machine and read the DUI advisory to the defendant. On appeal, the defendant argued she was not properly observed because during those events the officer's sight was directed elsewhere. We disagreed, pointing out the officer was standing or sitting next to the defendant at all times and, because the officer was continually in a position to use other senses, not just sight, to determine the defendant did not belch, burp or vomit during the monitoring period, the requisite procedure had been complied with. *Id.* at 341, 882 P.2d at 996. In this case, although Deputy Dahlinger may not have been quite as close to Broadfoot during the last three minutes of the monitoring time, as we indicated above, he was mere steps away and it was reasonable for the hearing officer to find his ability to utilize his remaining senses was not foreclosed during the time he was focused on setting up the machine.

Additionally, this case is distinguishable from cases where we have found the requisite fifteen-minute monitoring period was not complied with. In *DeFranco*, 143 Idaho 335, 144 P.3d 40, the district court found the officer did not properly comply with the monitoring period where he left the defendant in the backseat of his patrol vehicle with the door open and proceeded to the rear of the vehicle and looked through a file box in the trunk. Although the officer testified he could see the defendant through the gap between the trunk and the vehicle and would have heard if the defendant belched, we concluded this was not sufficient because the officer was not always in a position to use his sight or, alternatively, his senses of hearing or smelling. Specifically, we noted the defendant was facing away from the officer and during the time the officer was rummaging through the trunk he could not have heard or smelled a belch or regurgitation because the car was running and the two men were separated by the trunk lid and the rear window. *Id.* at 338, 144 P.3d at 43. In this case, there was no comparable separation between

10

Deputy Dahlinger and Broadfoot. As we noted above, the room was very small and they were within a few steps of each other at all times.

Similarly, in *State v. Carson*, 133 Idaho 451, 453, 988 P.2d 225, 227 (Ct. App. 1999), this Court held the defendant was not sufficiently observed to comply with the breathalyzer training manual. During the fifteen-minute monitoring period, the officer was driving his patrol car and intermittently glancing in the rearview mirror at the defendant located in the backseat. We held that unlike in *Remsburg*--where although the officer did not maintain constant visual contact with the defendant, there was no evidence the officer was unable to adequately monitor him utilizing his other senses--there was such evidence in *Carson*. Specifically, in addition to the absence of visual observation, the officer's use of other senses was impeded by his hearing impairment, noise from the engines, tires, rain and windshield wipers, and by the officer's position facing away from the defendant. *Id.* Again, this case is distinguishable, as there were no significant impediments to Deputy Dahlinger being able to hear Broadfoot when he was not specifically watching him. As we noted above, although the breath test machine was emitting beeping and humming noises, those noises were not particularly loud; nor was there evidence that Deputy Dahlinger had a hearing impediment like the officer in *Carson*.

As we have emphasized, this Court will not reweigh the evidence and substitute our judgment for that of the hearing officer. *Wilkinson*, 151 Idaho at 789, 264 P.3d at 685; *Bennett*, 147 Idaho at 142, 206 P.3d at 506. The hearing officer's conclusion that Deputy Dahlinger properly observed Broadfoot for the requisite time period is supported by substantial evidence in the record. Although Deputy Dahlinger was not immediately next to Broadfoot for approximately three minutes during the fifteen-minute monitoring period, Broadfoot failed to show by a preponderance of the evidence that Deputy Dahlinger was not continually in a position to use his senses, not just sight, to monitor Broadfoot. Thus, we reverse the district court's memorandum opinion vacating the administrative hearing officer's order to uphold the suspension of Broadfoot's driver's license.

Judge LANSING and Judge MELANSON **CONCUR.**