**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 39999**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2013 Unpublished Opinion No. 495 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: May 15, 2013 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| THOMAS M. DONNDELINGER, | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Defendant-Appellant. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Kathryn A. Sticklen, District Judge; Hon. Michael J. Oths, Magistrate.

Appellate decision by the district court, upholding an order withholding judgment of conviction in the magistrate's division for driving under the influence, <u>affirmed</u>.

Lovan Roker & Rounds, P.C.; Matthew J. Roker, Caldwell, for appellant. Matthew J. Roker argued.

Hon. Lawrence G. Wasden, Attorney General; Nicole L. Schafer, Deputy Attorney General, Boise, for respondent. Nicole L. Schafer argued.

---

WALTERS, Judge Pro Tem

Thomas M. Donndelinger was found guilty by a jury of driving under the influence. The magistrate entered an order withholding judgment of conviction, which order was upheld by the district court on an intermediate appeal. Donndelinger now appeals from the district court's intermediate appellate decision affirming the magistrate's order. For the reasons set forth below, we affirm.

## I.

## FACTS AND PROCEDURE

On December 27, 2009, at approximately 8:00 p.m., Donndelinger was exceeding the speed limit in a construction zone on the interstate when Corporal Sean Klitch of the Idaho State Police (ISP) effectuated a traffic stop. Upon contacting Donndelinger, Corporal Klitch suspected

1

Donndelinger had been drinking alcohol. After Donndelinger indicated he had consumed two martinis with dinner, Corporal Klitch administered field sobriety tests and then called for Trooper Janat Murakami to administer breath alcohol concentration testing. Donndelinger was placed in the back of Trooper Murakami's car during the requisite fifteen-minute observation period prior to administration of the test with the Lifeloc FC20. Donndelinger's breath samples both registered .152, well above the legal limit of .08.

Donndelinger was charged with driving under the influence of alcohol, Idaho Code § 18-8004. Donndelinger filed a motion in limine to exclude the breath test results, contesting the accuracy and reliability of the Lifeloc testing machine. The magistrate denied the motion. Donndelinger also filed a discovery request related to the anticipated testimony of the expert witness disclosed by the State, Jeremy Johnston, a forensic scientist at the ISP forensic lab. Donndelinger received no information in response to his request and the case proceeded to trial. At trial, Donndelinger presented the testimony of two experts,[1] who questioned the reliability and accuracy of the Lifeloc and described specific tests they performed in testing the machine. The State called Johnston as a rebuttal witness to challenge the defense experts' opinions. The jury found Donndelinger guilty as charged.

Donndelinger filed a motion for judgment of acquittal or, in the alternative, a new trial, asserting his breath test results were improperly admitted as evidence because the requisite observation period prior to administration of the test was not properly executed, the State failed to comply with his discovery request concerning disclosure of the substance of Johnston's anticipated testimony, and a portion of the video of the traffic stop was improperly admitted. Following a hearing, the magistrate issued a written order denying the motion. Donndelinger appealed to the district court, which affirmed the magistrate's decision. He now appeals to this Court.

## II.

## ANALYSIS

Donndelinger contends the magistrate erred in finding the officer complied with the requisite observation period prior to administering the breath test and, as a result, finding there was sufficient foundation to admit the results of the breath test. He also contends the prosecutor

---

[1]     Donndelinger, a physician, testified as an expert witness.

2

engaged in misconduct by failing to disclose the substance of an expert's testimony during discovery and for misrepresenting the content of the video of Donndelinger's stop that was admitted into evidence. He further challenges the denial of his motion for a judgment of acquittal or a new trial given the erroneous admission of evidence of his breath test, the video, and the prosecutor's misconduct. Finally, he contends an accumulation of these errors deprived him of a fair trial.

On review of a decision of the district court, rendered in its appellate capacity, we review the decision of the district court directly. *Losser v. Bradstreet*, 145 Idaho 670, 672, 183 P.3d 758, 760 (2008); *State v. DeWitt*, 145 Idaho 709, 711, 184 P.3d 215, 217 (Ct. App. 2008). We examine the magistrate record to determine whether there is substantial and competent evidence to support the magistrate's findings of fact and whether the magistrate's conclusions of law follow from those findings. *Losser*, 145 Idaho at 672, 183 P.3d at 760; *DeWitt*, 145 Idaho at 711, 184 P.3d at 217. If those findings are so supported and the conclusions follow therefrom and if the district court affirmed the magistrate's decision, we affirm the district court's decision as a matter of procedure. *Losser*, 145 Idaho at 672, 183 P.3d at 760; *DeWitt*, 145 Idaho at 711, 184 P.3d at 217.

**A.      Observation Period**

Donndelinger contends the district court erred in admitting evidence of his breath test results because the trooper administering the test did not properly comply with the requirements of a fifteen-minute observation period pursuant to Idaho Code and ISP rules. Specifically, he contends he was not closely enough observed during the observation period, pointing out numerous circumstances he claims inhibited the trooper's ability to properly observe him: he was in the back seat while the trooper was in the front seat, there was a Plexiglass and metal barrier between them (although the area between the driver's and passenger's seat was open), the back windows were open and the passing traffic was loud, an audio advisory CD was playing, the trooper's police radio was turned on, and the trooper engaged in multitasking by filling out paperwork and preparing the testing machine. He asserts that when the trooper was not visually observing him while she was preparing paperwork and the breath test machine and opening the car door to locate a pen, "her other senses were impaired by the existing conditions and unable to properly fulfill the purpose of the observation period."

Idaho Code § 18-8004(4) provides that tests to determine alcohol concentration of blood, urine, or breath must be performed in facilities or by methods approved by the ISP and in compliance with standards set by the ISP. *Wilkinson v. Dep't of Transp.*, 151 Idaho 784, 787, 264 P.3d 680, 683 (Ct. App. 2011); *In Re Mahurin*, 140 Idaho 656, 658, 99 P.3d 125, 127 (Ct. App. 2004). To carry out the authority conferred by the statute, the ISP issues operating manuals establishing procedures for the maintenance and operation of breath test equipment. *See* IDAPA 11.03.01.014. The applicable agency rules in effect at the time, the Idaho Standard Operating Procedure Breath Alcohol Testing (SOP), provided in relevant part:[2]

> **3.1  Prior to evidential breath alcohol testing**, the subject must be **monitored for fifteen (15) minutes**. Any material which absorbs . . . or traps alcohol should be removed from the mouth prior to the start of the 15 minute waiting period. During the monitoring period the subject should not be allowed to smoke, drink, eat, or belch/burp.
>
> . . . .
>> 3.1.5  During the monitoring period, the operator must be alert for any event that might influence the accuracy of the breath test.
>>> 3.1.5.1  The operator must be aware of the possible presence of mouth alcohol as indicated by the testing instrument. If mouth alcohol is suspected or indicated, the operator should begin another 15-minute waiting period before repeating the testing sequence.
>>> 3.1.5.2  If, during the 15-minute waiting period, the subject vomits or is otherwise suspected of regurgitating material from the stomach, the 15-minute waiting period must begin again.

Idaho State Police, STANDARD OPERATING PROCEDURE, BREATH ALCOHOL TESTING (Rev. Jan. 2009).

The purpose of the observation requirement of the fifteen-minute monitoring period is to rule out the possibility that alcohol or other substances have been introduced into the subject's mouth from the outside or by belching or regurgitation. *Wilkinson*, 151 Idaho at 787, 264 P.3d at 683; *Bennett v. Dep't of Transp.*, 147 Idaho 141, 144, 206 P.3d 505, 508 (Ct. App. 2009). To satisfy the observation requirement, the level of surveillance must be such as could reasonably be expected to accomplish that purpose. *Wilkinson*, 151 Idaho at 787, 264 P.3d at 683; *Bennett*, 147 Idaho at 144, 206 P.3d at 508. In *State v. DeFranco*, 143 Idaho 335, 338, 144 P.3d 40, 43 (Ct. App. 2006), this Court commented that the fifteen-minute monitoring period is not an onerous burden and "[t]his foundational standard ordinarily will be met if the officer stays in close

---

[2]      The procedures have since been revised several times.

4

physical proximity to the test subject so that the officer's senses of sight, smell and hearing can be employed." An officer need not "stare fixedly" at a suspect for fifteen minutes. *Bennett*, 147 Idaho at 144, 206 P.3d at 508. Rather, so long as the officer is continually in a position to use his senses, not just sight, to determine that the defendant did not belch, burp, or vomit during the monitoring period, the observation complies with the training manual instructions. *Id.*

This Court defers to the trial court's findings of fact when supported by substantial evidence, but exercises free review over questions of law. *State v. Remsburg*, 126 Idaho 338, 339, 882 P.2d 993, 994 (Ct. App. 1994). Whether, upon the facts found, the State has satisfied the foundational requirements for the admission of breath test results--that is, shown the officer complied with the requisite standards and administration of the breath test--is a question of law over which we exercise free review. *State v. Carson*, 133 Idaho 451, 452, 988 P.2d 225, 226 (Ct. App. 1999); *Remsburg*, 126 Idaho at 339, 882 P.2d at 994.

At trial, Trooper Murakami testified she could hear and see Donndelinger throughout the observation period. However, Donndelinger objected to admission of the breath test results, contending there was "no assurance" the trooper adequately observed him to "ensure that [he did] not burp or belch or otherwise regurgitate anything from his stomach." The magistrate determined the observation period was sufficient, a ruling it reconfirmed in response to Donndelinger's motion for judgment of acquittal or a new trial:

> [T]here is sufficient foundation. . . . [T]he [audio advisories] are playing in 98 percent of all waiting period cases . . . .
> . . . .
> I think that the essence of the cases I've seen . . . is that it has to be reasonable proximity for somebody to make an observation. It doesn't have to be stared fixedly at. I think from a proximity of 5 feet away, I think that the officer in this case had a reasonable opportunity to observe. And . . . I think the testimony was clear on this, but I think it clearly was more than 15 minutes, as we can all tell from that video.

The district court affirmed the magistrate's ruling, finding the magistrate "obviously credited [the trooper's] testimony" that "she could see and hear Donndelinger during the observation period."

As the State points out on appeal, Donndelinger's assertion that Trooper Murakami's "senses of sounds and smell were defeated by the conditions existing both inside and outside of the vehicle," when she was looking away from Donndelinger to fill out paperwork, prepare the

5

machine, and retrieve a pen, is contrary to the trooper's testimony that she could hear and see Donndelinger during the observation period and her specific testimony that she heard Donndelinger clearing his throat and breathing "a little bit heavy." The trooper testified she turned down the police radio, and a review of the video recording from her vehicle during the period at issue confirms that despite the increased traffic noise after the windows were opened, she could easily hear Donndelinger clearing his throat and giving verbal and other indications of being in distress due to his asserted claustrophobia. In this regard, Trooper Murakami testified she was aware of his increasing anxiety and attempted to assist him in calming down, including by rolling down the back windows. The recording also shows that while there was noise from passing traffic, the trooper and Donndelinger were conversing normally and did not seem to have any difficulty hearing each other. Based on the record, there was substantial evidence to support the magistrate's finding of fact that despite the road noise and other distractions, Trooper Murakami had a "reasonable opportunity" to see and hear Donndelinger throughout the observation period. And, given the facts as found by the magistrate, and evidence on the video recording, the magistrate and district court did not err in concluding the trooper observed Donndelinger to the degree required by the applicable SOP.

This case is readily distinguishable from the cases where this Court has found the observation was not adequate. For example, in *Carson*, 133 Idaho at 453, 988 P.2d at 227, we determined the defendant was not sufficiently observed to comply with the operative training manual requirements because during the observation period the officer was driving his patrol car and only intermittently glanced in the rearview mirror at the defendant located in the backseat. In addition to the absence of visual observation, the officer's use of other senses was impeded by his hearing impediment; noise from the engine, tires on the road surface, rain, and windshield wipers; and by his consistent position facing away from the defendant. *Id*. By contrast here, Trooper Murakami's attention was not directed towards driving the vehicle and there was no evidence presented of a hearing impediment or noise from the vehicle or outside source that impeded her ability to utilize other senses (as can be observed in the video recording where Donndelinger can clearly be heard). *Accord Remsburg*, 126 Idaho at 341, 882 P.2d at 996 (holding the observation period was sufficient where, although the officer's sight was at times directed elsewhere, during the entire period the officer was in close proximity to the defendant and was able to use his remaining senses). *Cf. DeFranco*, 143 Idaho at 337-38, 144 P.3d at

6

42-43 (holding the observation was not sufficient where the officer was not in a position to use his sight or alternate senses during the time he spent rummaging through the trunk while the defendant was in the backseat). The district court did not err in affirming the magistrate's determination that the observation of Donndelinger prior to administration of the breath test was sufficient.

**B.    Prosecutorial Misconduct**

**1.    Discovery violation**

Donndelinger contends the prosecutor engaged in misconduct by "failing to disclose required expert witness discovery" of Jeremy Johnston, which he argues was "tactical and designed to gain an unfair advantage in the jury trial." Donndelinger acknowledges he did not object to the alleged misconduct at trial. Where prosecutorial misconduct was not objected to at trial, Idaho appellate courts may order a reversal only when the defendant demonstrates the violation in question qualifies as fundamental error. *State v. Perry*, 150 Idaho 209, 227, 245 P.3d 961, 979 (2010). Such review includes a three-prong inquiry wherein the defendant bears the burden of persuading the appellate court that the alleged error:  (1) violates one or more of the defendant's unwaived constitutional rights; (2) plainly exists (without the need for any additional information not contained in the appellate record, including information as to whether the failure to object was a tactical decision); and (3) was not harmless. *Id*. at 228, 245 P.3d at 980.

Idaho Criminal Rule 16 governs discovery in criminal cases. Relevant to the issue presented here, subsection (b)(7) provides:

> **Expert witnesses.** Upon written request of the defendant the prosecutor shall provide a written summary or report of any [expert] testimony that the state intends to introduce . . . at trial or hearing. The summary provided must describe the witness's opinions, the facts and data for those opinions, and the witness's qualifications. . . . This subsection does not require disclosure of expert witnesses, their opinions, the facts and data for those opinions, or the witness's qualifications, intended only to rebut evidence or theories that have not been disclosed under this Rule prior to trial.

Johnston, the magistrate found, "was truly a rebuttal witness and was called to rebut defense theories that had plainly been disclosed to the state."

Johnston testified solely as a rebuttal witness in response to issues raised by Donndelinger's expert witnesses, Dr. Kalivas and Donndelinger, who testified in support of the defense theory that the Lifeloc breath testing device is unreliable because it is likely to give

7

"false positive" readings based on the presence of various foods, vitamins, and medicines. Both Dr. Kalivas and Donndelinger described testing they undertook to test the reliability of the Lifeloc, the substance of which was disclosed to the State prior to trial. In rebuttal, Johnston testified that he believed the Lifeloc was reliable and thoroughly tested and that he had tested Donndelinger's theories pertaining to defects in the Lifeloc in order to rebut them. In addition, he offered his opinions as to why the defense experts' theories, that the Lifeloc was unreliable, were flawed. Over the State's objection, Donndelinger was allowed to elicit from Johnston the fact that Johnston's test results and opinions were not disclosed to the defense prior to trial.

Even assuming, without deciding, the prosecutor engaged in misconduct by failing to comply with the discovery rule, Donndelinger has not shown this constitutes fundamental error because he has not shown it implicated a constitutional right. Our Supreme Court has held that late disclosure of evidence requires a reversal of conviction if the lateness of the disclosure impaired the defendant's constitutional right to receive a fair trial by affecting the defendant's ability to prepare and present his defense. *State v. Araiza*, 124 Idaho 82, 93, 856 P.2d 872, 883 (1993). Here, Donndelinger advances the vague assertion that the "crux of [his] defense was thwarted by Respondent's tactic to withhold the requested discovery under the guise of rebuttal"; however, he does not indicate *how* his preparation and presentation of his defense was hampered, nor does he indicate what, if anything, he would have done differently had the State made a timely disclosure. He had the opportunity prior to trial to file a motion to compel in regard to discovery the State failed to produce and at trial was given the opportunity to present his theory through the testimony of two experts who questioned the reliability of the Lifeloc results and then cross-examined Johnston and called Donndelinger as a surrebutal witness who questioned Johnston's methods and results. Notably, even after Donndelinger was made aware at trial that Johnston would be testifying and the content of that testimony, he made no motion to exclude or limit Johnston's testimony, nor did he make any motions requesting additional time to prepare. Donndelinger has simply not carried his burden pursuant to the fundamental error doctrine to prove his trial was unfair to the degree that an unwaived *constitutional* right was violated. [3]

---

[3]     Nor would Donndelinger likely be successful in carrying his burden to show the error was plain and not the result of a tactical decision not to object. The record indicates the State disclosed Johnston as a potential witness prior to trial and Donndelinger was aware of Johnston's occupation--thus, certainly making the gist of Johnston's potential testimony evidence obvious.

## 2. Misrepresentation of video evidence

Donndelinger also contends the prosecutor committed misconduct by misrepresenting the content of the video of Donndelinger's stop that was admitted into evidence. Specifically, Donndelinger contends the prosecutor told the magistrate and defense counsel that the video was approximately ten minutes long, but the video actually admitted was nearly an hour long and included the field sobriety tests the magistrate previously excluded. When the issue of the length and content of the video was first raised prior to trial, the State was directed to investigate the possibility of redacting the video. Then, after the video was introduced through the testimony of Corporal Klitch, only the first approximately fifteen minutes, which the magistrate previously ruled was admissible, was published to the jury in open court. Later, the State indicated it was unable to redact the video and suggested giving the jury the option to view the video in the courtroom if it wished to view it during deliberations. Donndelinger moved for a mistrial on the basis the video as admitted was not limited to the portion the magistrate ruled was admissible. The magistrate did not grant the motion and eventually determined the jury would be allowed to view the video, if they so requested, with the assistance of the court marshal, with the instruction the video not be played beyond the approximately fifteen-minute mark. The record does not indicate whether the jury actually viewed the video, with or without the marshal's assistance.

---

In addition, Donndelinger offered no objection to Johnston's testimony, even when it became apparent the State intended to call him to rebut Donndelinger's experts. In a fairly lengthy discussion between the parties and the magistrate, Donndelinger indicated numerous times that he did not receive this information prior to trial, but never requested any remedy other than the ability to elicit, in front of the jury, the fact that Donndelinger was not informed of the content of Johnston's testimony prior to trial. In this sense, it appears Donndelinger intended to use the State's failure to disclose as a tactic to cast doubt on Johnston's testimony. As is well settled, the trial court is ordinarily in the best position to determine the relevant facts and to adjudicate the dispute. *State v. Longest*, 149 Idaho 782, 784, 241 P.3d 955, 957 (2010). Requiring a contemporaneous objection prevents the litigant from sandbagging the court, *i.e.*, remaining silent about his objection and belatedly raising the error only if the case does not conclude in his favor. *Id.* As the magistrate found in denying Donndelinger's motion for judgment of acquittal, had Donndelinger raised the issue at trial, alternative remedies were available:

> [A] variety of avenues would have been available to the court. The evidence could have been excluded. The defense could have been given additional time to prepare. Some parts of the evidence could have been admitted and other parts excluded.

Donndelinger's argument on appeal that these circumstances amounted to reversible error, is unavailing. As discussed above, where there was no contemporaneous objection to alleged prosecutorial misconduct, a defendant must prove the asserted error amounted to fundamental error. *Perry*, 150 Idaho at 228, 245 P.3d at 980. Here, even assuming prosecutorial misconduct (a stretch given the facts), Donndelinger has not proven the alleged error was not harmless. There is no evidence in the record the jury ever saw the portion of the video past the fifteen-minute mark and Donndelinger makes no such assertion. Thus, any assertions of prejudice are mere speculation and are not sufficient to carry Donndelinger's burden to prove the asserted error was not harmless.

## C.     Post-Trial Motions

In addition to raising the above issues separately, Donndelinger contends the magistrate erred in denying his motion for a judgment of acquittal or, in the alternative, a new trial on essentially these same grounds. A motion for new trial is governed by Idaho Code § 19-2406 and Idaho Criminal Rule 34. The available grounds for a new trial are set out in section 19-2406, and include "[w]hen the court . . . has erred in the decision of any question of law arising during the course of the trial." I.C. § 19-2406(5). Rule 34 states that a defendant's motion for a new trial may be granted "if required in the interest of justice." Rule 34 does not create additional grounds for granting a new trial, but instead, provides the standard for determining whether a new trial should be granted when one or more of the statutory bases are present. *State v. Cantu*, 129 Idaho 673, 675, 931 P.2d 1191, 1193 (1997); *State v. Howell*, 137 Idaho 817, 819, 54 P.3d 460, 462 (Ct. App. 2002). A decision on a motion for a new trial is reviewed under an abuse of discretion standard. *State v. Egersdorf*, 126 Idaho 684, 687, 889 P.2d 118, 121 (Ct. App. 1995). The standard of review for a motion for judgment of acquittal under Idaho Criminal Rule 29(c) is whether there was substantial evidence upon which a trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Hoyle*, 140 Idaho 679, 684, 99 P.3d 1069, 1074 (2004).

In regard to his motion for a judgment of acquittal, Donndelinger contends that since the State proceeded to convict him solely under the per se theory of driving under the influence and there was insufficient foundation laid for admission of the breath test results (due to the officer's failure to comply with the observation requirement), there was not substantial evidence to support the conviction and it was error to deny the motion. Given our conclusion that admission

10

of the breath test results was not erroneous, Donndelinger's contention that he was entitled to a judgment of acquittal on this basis is unavailing.

He also contends a new trial should have been ordered based on the errors asserted above and because the magistrate "erred in the decision of a[] question of law" by allowing the unredacted video to be submitted to the jury which was "extremely prejudicial." Again, admission of the breath test results was not erroneous, and therefore, the magistrate did not err in denying the motion for a new trial on this basis. To the extent Donndelinger argues the instances of prosecutorial misconduct entitle him to a new trial, this argument is also unavailing because prosecutorial misconduct may not form the basis of such a motion. *State v. Priest*, 128 Idaho 6, 15, 909 P.2d 624, 633 (Ct. App. 1995). In addition, as we discussed above, the magistrate specifically indicated the jury was only to see the first fifteen minutes of the video and there is no evidence the jury did not comply. Thus, Donndelinger has not shown the magistrate erred in the admission of the video.

Finally, Donndelinger also asserts cumulative error on appeal. However, a necessary predicate to application of the cumulative error doctrine is a finding of more than one error. *State v. Thumm*, 153 Idaho 533, 545, 285 P.3d 348, 360 (Ct. App. 2012). As we have not found even a single error, the doctrine is inapplicable.

### III.

### CONCLUSION

The district court did not err in affirming the magistrate's determination that the observation of Donndelinger prior to administration of the breath test was sufficient. In addition, Donndelinger has not proven the alleged prosecutorial misconduct in regard to a discovery violation and admission of the video was fundamental error. Finally, the district court's decision affirming the magistrate's denial of Donndelinger's motion for judgment of acquittal or a new trial was not erroneous. The district court's appellate decision, upholding the magistrate's order withholding judgment of conviction for driving under the influence, is affirmed.

Judge GRATTON and Judge MELANSON **CONCUR.**

11